## Williams *v.* Batson.

(In Banc. March 20, 1939. Suggestion of Error Overruled May 29, 1939.)

[187 So. 236. No. 33446.]

GRIFFITH and McGEHEE, JJ., and ETHRIDGE, P. J., dissenting.

**Hathorn & Williams**, of Poplarville, for appellant.

**H. H. Parker** and **J. M. Morse**, both of Poplarville, for appellee.

Argued orally by **F. C. Hathorn** and **E. B. Williams**, for appellant, and by **H. H. Parker** and **J. M. Morse**, for appellee.

**Smith, C. J.,** delivered the opinion of the court.

On August 12, 1927, R. J. Williams conveyed the timber on land owned by him to Randolph Batson for $15,-000 in cash, and on August 31, 1927, he conveyed the timber on other land owned by him to Batson for $4,605 in cash. The two deeds are identical in language, except as to consideration and description of the land; and the reporter is directed to set out one of them in full, omitting the description of the land.[1] The ten years re-

---

[1] State of Mississippi.
Pearl River County.

In consideration of the sum of fifteen Thousand dollars ($15,000.00), cash to me in hand paid on this date by Randolph Batson, of Hillsdale, Mississippi, the receipt of which is hereby confessed and acknowledged, I have this day sold, and do by these presents hereby bargain, sell, convey, and warrant unto said Randolph Batson all the timber, trees, and growth of every nature and kind lying, standing, or being on the following described lands, in Pearl River County, State of Mississippi, particularly described as follows, to-wit:   .   .   .

".   .   . together with full and complete right of ingress, egress and regress in, to, upon, or across said lands, with any and all teams, tools, laborers, and appliances, including logging railroads or dummy lines, with the right to construct, maintain and operate on said lands a sawmill, with the necessary shanties, houses, lumber ramps, etc., or the right to go upon said lands with any and all ways, equipments, machinery, or appliances suitable, necessary, or convenient for the purpose of cutting, manufacturing, removing or marketing said timber, within the period of ten years from and after this date, and so long thereafter as the taxes are paid on said land as is hereinafter provided.

It is understood and agreed that the grantee herein or his assigns shall have the right under this conveyance to enter said lands for the purpose of cutting and removing timber hereby conveyed at any time, or times, he or they may desire during the life of this instrument. That is, they may cut a part of said timber, and abandon their operations, and reenter and cut and remove said timber from said lands from time to time during the life of this instrument, so long as the grantee or his assigns shall pay all taxes levied or assessed against said property, whether said period exceeds the ten year period granted herein or not, and grantee, or his assigns shall have the right to cut and remove from said lands any timber, trees, or growth he or they may desire to cut, and remove therefrom at the time of the cutting of said timber.

ferred to in the deeds have expired, and the appellee, the grantee therein, has done nothing towards cutting and removing the timber, but has paid all taxes that have been assessed on the land. The appellant, who has succeeded to R. J. Williams' title to the land, is claiming to own the timber thereon free from any claim of the appellee there-

It is further understood and agreed and is a part of the consideration for this conveyance, that grantee shall pay one-half of the taxes levied or assessed against the lands and timber above described for the year 1927, and so long as this instrument remains in full force and effect after said year 1927, the grantee shall pay all taxes levied or assessed against said lands and timber. It being expressly understood that when grantee or his assigns shall have removed the timber from said lands, finished its operations, and desires to be relieved from further liability for said taxes, he may be relieved from said responsibility by releasing the lands herein described from the effects of this instrument, in writing, to the grantor.

It is further understood and agreed that for the consideration herein named, grantor hereby grants unto grantee or his assigns a right of way through any other lands he now owns between the lands herein described and the Town of Picayune, for the purpose of transporting timber hereby conveyed from the lands herein described to loading points in the course of the removal and marketing of said timber. This right shall extend to and include the right to transport the timber either as logs or as lumber or manufactured products.

It is expressly understood and agreed that the rights and privileges hereby conveyed to grantee shall not preclude grantor from using the lands herein described for pasturing purposes or any other purpose which does not effect or interfere with the rights hereby granted to grantee. The grantee, however, for himself shall have hunting and fishing privileges on the lands herein described during the life of this instrument.

It is understood and agreed that this conveyance is executed in pursuance with the terms of a certain agreement between grantor and grantee of date August 11, 1927, which said agreement sets out the consideration for said timber in small quantities, or subdivisions, and in the event that the title to any part or parts of the above described timber shall fail, then the value set out and listed in said agreement for the respective subdivision or subdivisions of said timber shall govern or control any recovery or recoveries from breach of warranty for any such part or parts of said timber, the title to which may fail to which unit values shall of course be added legal interest and taxes paid.

Witness my signature, on this the 12th day of August, 1927.

                                             R. J. Williams.

to. In order to cancel this claim of the appellant and to quiet his title to the timber, the appellee brought this suit in equity, and there was a decree in accordance with the prayer of his bill of complaint—that the appellee owned the timber with the right to cut and remove it so long as he pays the taxes on the land.

The appellant's contention is, that having failed to begin the cutting of the timber within the ten years of the execution of his deeds thereto, appellee lost all further right to enter the land for that purpose, and, therefore, the timber reverted to him, the appellant; but, if mistaken in this, the appellee has only a reasonable time after the expiration of the ten years in which to cut and remove the timber. The appellee's contention is that the deeds vested in him the right to cut and remove the timber at any time, provided only he paid the taxes on the land and timber.

It will thus be seen that the case turns on the interpretation of the two deeds. In interpreting these deeds we must bear in mind certain elementary rules therefor:

1. "Interpretation of words and of other manifestations of intention forming an agreement, or having reference to the formation of an agreement, is the ascertainment of the meaning to be given to such words and manifestations." 1 Rest. Contracts, Sec. 226, In other words, "It is the process of determining from such manifestations what must be done or forborne by the respective parties in order to conform to the terms of the contract or agreement." 3 Williston on Contracts (Rev. Ed.), Sec. 601.

2. "The standard of interpretation of an integration (written instrument), except where it produces an ambiguous result, or is excluded by a rule of law establishing a definite meaning, is the meaning that would be attached to the integration by a reasonably intelligent person acquainted with all operative usages and knowing all the circumstances prior to and contemporaneous with the making of the integration, other than oral state-

ments by the parties of what they intended it to mean."
1 Rest. of Contracts, Sec. 230; Williston, op. cit., Sec. 607.

3. There are certain primary rules that may be invoked in aid of this standard of interpretation, among which are:

1. "The ordinary meaning of language throughout the country is given to words unless circumstances show that a different meaning is applicable;"

2. "A writing is interpreted as a whole and all writings forming part of the same transaction are interpreted together:"

3. "All circumstances accompanying the transaction may be taken into consideration, subject in case of integrations to the qualification stated in Sec. 230." 1 Rest. Contracts, Sec. 235; Williston, op. cit., Sec. 618.

4. When, but not unless, the meaning to be given a written instrument remains uncertain after applying thereto this standard of interpretation and the primary rules in aid thereof, several secondary rules are applicable. 1 Rest. of Contracts, Sec. 236; Williston, op. cit. Section 619; Hart v. Gardner, 74 Miss. 153, 20 So. 877; Wood v. Morath, 128 Miss. 143, 90 So. 714. We will return hereinafter to these secondary rules of interpretation.

The circumstances in the light of which these deeds must be interpreted are: the land upon which this timber was situated was swamp and overflow land, valuable only for the timber growing thereon, for fishing and hunting thereon, and for pasturage purposes; the grantee paid for the timber what the grantor was willing to take for it; the hunting, fishing, and pasturage privileges were reserved to the grantor, and by the execution of the deeds, the grantor was relieved of the payment of taxes on the land as long as the deeds remained in effect.

We come now to the deeds. The first paragraph of each conveys the timber without limitation on the time within which the grantee could enter the land and cut and remove the timber, unless this time is limited by other provisions of the deed. Butterfield Lumber Co. v.

Guy, 92 Miss. 361, 46 So. 78, 15 L. R. A. (N. S.), 1123, 131 Am. St Rep. 540; Nichols v. Day, 128 Miss. 756, 91 So. 451. The time within which the grantee may enter the land and cut and remove the timber is limited by the last sentence in the second paragraph of the deeds to "within the period of ten years from and after this date, and so long thereafter as the taxes are paid on said land as hereinafter provided." The provision for payment of taxes appears in the fourth paragraph of the deeds, and is as follows: "It is further understood and agreed and is a part of the consideration for this conveyance, that grantee shall pay one-half of the taxes levied or assessed against the lands and timber above described for the year 1927, and so long as this instrument remains in full force and effect after said year 1927, the grantee shall pay all taxes levied or assessed against said lands and timber. It being expressly understood that when grantee or his assigns shall have removed the timber from said lands, finished its operations, and desires to be relieved from further liability for said taxes, he may be relieved from said responsibility by releasing the lands herein described from the effects of this instrument, in writing, to the grantor." These two provisions of the deeds confer on the grantee, in plain and unambiguous language, the right to enter the land and cut and remove the timber for an unlimited period of time, provided only that he pays "all taxes levied or assessed against said lands and timber."

But it is said that this time is cut down by the third paragraph of the deeds. The first sentence of that paragraph is as follows: "It is understood and agreed that the grantee herein or his assigns shall have the right under this conveyance to enter said lands for the purpose of cutting and removing timber hereby conveyed at any time, or times, he or they may desire during the life of this instrument." The words during the "life of this instrument" refer to the period of time within which it remains effective; and under the provisions of the deeds, hereinbefore set forth, they remain in full force and ef-

fect (a) until the timber has been cut and removed, or (b) if the timber has not been cut and removed, so long as the grantee pays the taxes on the land and timber. All doubt as to this is removed by the remainder of the paragraph which is as follows: "That is, they may cut a part of said timber, and abandon their operations, and reenter and cut and remove said timber from said lands from time to time during the life of this instrument, so long as the grantee or his assigns shall pay all taxes levied or assessed against said property, whether said period exceeds the ten year period granted herein or not, and grantee, or his assigns shall have the right to cut and remove from said lands any timber, trees, or growth he or they may desire to cut, and remove therefrom at the time of the cutting of said timber." The phrase "during the life of this instrument" is here defined by the words immediately following it—"so long as the grantee or his assigns shall pay all taxes levied or assessed against said property, whether such period exceeds the ten-year period herein granted or not." This paragraph, in addition to making clear the meaning of the phrase "during the life of this instrument," accomplishes, and seems to have been inserted to accomplish, two purposes: to make clear (1) that if, after commencing to cut and remove the timber the grantee should discontinue so doing before all the timber has been cut and removed, he would not thereby lose the right to again enter the land and cut and remove the timber; and (2) that in cutting the timber the grantee was not restricted to the timber growing on the land when the deed was executed, but had the right to cut and remove any that might be thereon at the time of the cutting.

But it is said that there are three rules of construction which, if applied ,will make it appear that the limitation on the time within which this timber must be cut and removed is a reasonable time after the expiration of ten years from the date of the deeds: These rules are:

1. "An interpretation which gives a reasonable, law-

ful and effective meaning to all manifestations of intention is preferred to an interpretation which leaves a part of such manifestations unreasonable, unlawful or of no effect.''

2. ''Where there is an inconsistency between general provisions and specific provisions, the specific provisions ordinarily qualify the meaning of the general provision.'' Rest. of Contracts, Sec. 236; Williston, op. cit., Section 619.

3. The court should not interpolate into or eliminate from a written contract words of material legal consqeuence in order to uphold it. 13 C. J. 535.

The first two of these rules are of the secondary class, hereinbefore referred to, and cannot be invoked, as hereinbefore pointed out, when the contract without them is unambiguous,—in other words, they can be invoked only when necessary to make clear that which is doubtful. The words ''within the period of ten years from and after this date, and so long thereafter as the taxes are paid on said land as is hereinafter provided,'' are about as plain and unambiguous as words can be; and the ''hereinafter'' provision, as hereinbefore set forth, makes no change therein.

It is said under the first of these two rules the ten years must be considered a primary period, and the remainder of the sentence be interpreted as conferring only such additional time as bears a reasonable relation to the ten-year period. But so to hold would be to write into the deeds something the parties thereto carefully avoided doing, i. e., leaving the time for the cutting of the timber to be thereafter determined by what, under the circumstances, would be a reasonable time therefor, as to which reasonable men could easily differ. Even if we should say that under our interpretation of the deeds it was unnecessary for the ten-year period to be inserted therein, that fact could not be used to raise an ambiguity in the plain language of the deeds. But the ten-year period does serve a purpose. The words ''within a period of ten years from and after this date, and so long

thereafter as the taxes are paid on said land as hereinafter provided," unless qualified by the fourth paragraph of the deeds, clearly mean "within a period of ten years from and after this date," at all events, "and so long thereafter as the taxes are paid on the land as is hereinafter provided," the right to cut and remove the timber after the expiration of ten years being dependent on the payment of the taxes on the land "as hereinafter provided."

When we turn to the fourth paragraph of the deeds, we find that it obligates the grantee to pay the taxes on the land so long as the deeds remain in effect, but does not proivde for a forfeiture of the right to cut and remove the timber on his failure to pay the taxes. Such a forfeiture appears only in the second paragraph of the deeds, and there applies only to the taxes paid on the land after the expiration of the ten years —"so long thereafter as the taxes are paid on said land."

The provision of the deeds as to the time for cutting the timber is a unity, not a specific provision followed by a general one which covers the matter of the specific provision. The two clauses of the provision cover separate and distinct periods of time; the first, a period of ten years, and the second, a period of time thereafter which would end when, but not until, default should be made in the payment of the taxes on the land. The second becomes operative when, but not until, the first has ended. To hold that the period of time beginning after the expiration of the ten years must in length bear a reasonable relation to the ten-year period—must be likened unto it—would be but a mistaken application of the maxim, "Noscitur a sociis". We, of course, have not violated the third of these rules, for we have interpreted the deeds as written, without inserting words therein or eliminating words therefrom. We conclude, therefore, that the deeds mean exactly what they say, and the time for the cutting of the timber was "within the period of ten years from and after this date (of the

deeds), and so long thereafter as the taxes are paid on said land."

Affirmed.

**Anderson, J.**, delivered a concurring opinion.

I concur in Judge SMITH's opinion, however, I desire to say further: There is no ambiguity in the deeds and they are the same except as to the purchase price and the timber conveyed. Taking one of them, here is what they mean, Batson addressing Williams: "I would like to purchase from you the timber on that 620 acres of swamp land of yours; how much will you take for it?" Williams: "$15,000.00, and you pay the taxes; how long do you want in which to cut and remove the timber?" Batson: "I hope to do it within ten years, but might not be able to do so." Williams: "Well, the principle value of the land is its timber, and for pasturage, hunting, and fishing; if you will pay me $15,-000.00, and continue to pay the taxes—pasturage, fishing, and hunting rights to remain in me—I will make you a deed giving you all the time you want, provided, when you wind up your operations on the place, you make me a quitclaim deed releasing any further rights." To hold otherwise would overrule Nichols v. Day, 128 Miss. 756, 91 So. 451.

**Griffith, J.**, delivered a dissenting opinion.

As stated in the controlling opinion, appellee did not cut or remove any of the timber within the period of ten years, but has paid all the taxes on the land and timber since the date of the deed; and it is admitted that he expects to pay, is able to pay, and will pay, all such taxes so long as the timber or any part thereof shall remain uncut by him or his assigns.

The contention of appellee, sustained by the trial court, is that he has as many years in the future, and even in the far future, within which to cut or remove the timber as he shall for each successive year pay the taxes,

and if this is to be called a right exercisable in perpetuity, he has it for himself and his assigns.

Two contentions are made by appellant: First, that appellee's right to cut any timber on the land, after the ten-year period, specifically mentioned in the timber deed, was conditioned upon his beginning the cutting upon some part thereof within said ten years; and, second, if mistaken in the first, that appellee has only a reasonable period of time to cut and remove after the specifically mentioned ten years.

Appellant relies chiefly on Hall v. Eastman, Gardiner & Co, 89 Miss. 588, 43 So. 2, 119 Am. St. Rep. 709, and appellee upon Nichols v. Day, 128 Miss. 756, 91 So. 451. We are of the opinion that neither of these cases, nor any other of the cases in our own reports, are sufficiently similar in decisive point of fact to furnish a solution of the questions presented by the particular deed now before us, and that we must recur to the general principles which have been established in the law for the interpretation of such contracts—the rules in respect to the interpretation of deeds being the same as are applicable to other contracts. 16 Am. Jur. 528.

First among these principles is that every word or clause in the contract must be given a meaning of appreciable weight and importance, if reasonably possible, or as otherwise stated, no word or cause is to be stricken therefrom so long as it is reasonably possible to construe the contract so as to retain therein the questioned word or clause. Harris v. Townsend, 101 Miss. 590, 58 So. 529; Shapleigh Hardware Co. v. Spiro, 141 Miss. 38, 106 So 209, 44 A. L. R. 393; Southern Railway Co. v. Anderson & Fuller, 158 Miss. 543, 130 So. 743; Dunn v. Stratton, 160 Miss. 1, 7, 133 So. 140; 12 Am. Jur. pp. 774, 775; 16 Am. Jur. pp. 534, 5.

The contention of appellee runs, as we think, squarely into conflict with the above-stated principle, for his contention would require that the clause "within the period of ten years" be stricken from the contract, and as ef-

fectively stricken as if it had never been written therein by the parties.

Another of the established principles of interpretation, of equal or even of more importance than the one above stated, is that the court shall not rewrite the contract for the parties by interpolating or inserting therein additional words or clauses which the parties did not themselves insert. Some of the language of the courts is so broad as to say that, except as to obvious clerical errors or omissions, this can never be done under any circumstances, and particularly that a specific provision may not be rewritten by interpolations upon it or additions to it in order to make it harmonize with broader general provisions. See the cases cited in 13 C. J. p. 535, under Sec. 496, Contracts, and 16 Am. Jur. p. 533, Sec. 169. Mr. Williston says on this subject, 2 Williston on Contracts, Sec. 619, p. 1200: "The freedom of construction permissible is, however, limited by the principle that unexpressed intention is of no legal effect. The reason for interpolating, omitting or disregarding specific words is that in the remainder of the writing an intention is expressed which makes it evident that the particular words were erroneously used." It is not necessary for us here to say that, except as to clerical errors, interpolations may never be made, for the case now before us does not require any such extreme resort.

The first contention of appellant that appellee's right to cut any timber on the land after the ten-year period specifically mentioned in the timber deed, was conditioned upon his beginning the cutting on some part thereof within said ten years, runs squarely into conflict with the established principle stated in the next preceding paragraph in that it would require the court to interpolate or write into the contract an additional clause, next following the first quoted paragraph of the timber deed, in words as follows: "And provided that there shall be no such extended period unless the grantee shall have begun to cut the timber on some part of said lands within the said first period of ten years"—and this the

Court cannot do. But if the Court should interpolate such an additional clause or provision, it would have to interpolate further and say what part of the cutting must be done within ten years—would have to say whether a greater part or a substantial part, or would simply use the language which the parties themselves have used in the succeeding paragraph, "a part of said timber." Using the quoted words, the grantee could cut 40 acres within the ten years, and then have an unlimited time, upon the payment of the annual taxes, to cut the remainder of 580 acres. To use a homely illustration, this would allow the tail of the cutting of a small part within a short time to wag the dog of the greater part throughout a long time. And if it be said that the remaining greater part must then be cut within a reasonable time after the ten-year period, this would lead back into the same main pathway which we think the course of decision should pursue from the beginning, without the practically useless detour by way of an interpolation requiring a cutting of some part within ten years.

Still another established principle of construction of no less dignity than the principles already stated is that where words or a clause of a particular or special import is followed by, or is used in direct connection with, other words or clauses of a broader or more general import, the court will neither delete the particular or special clause nor write into the contract another particular or special clause, but rather will ameliorate or restrain the general or broader clause or clauses so as to bring the latter into a reasonable relation of harmony to and with the associated particular or special clause in question. This rule has been variously stated, A. L. I. Rest. Contracts, Sec. 236(c); 12 Am. Jur. p. 779, Sec. 244; 16 Am. Jur. pp. 537, 538; 2 Williston on Contracts, pp. 1200, 1201; but when the substance is extracted from all these various statements, it is found that it may be outlined as has above been briefly expressed in this paragraph. The rule is not available, or rather disappears, of course, when the parties have expressly made it clear that it is

their intention that the general or broader words or clauses are to overbear or dominantly control the particular words, as was the case for instance in Copiah Hardware Co. v. Johnson, 123 Miss. 624, 86 So. 369, and as the controlling opinion maintains is the case here; but we think such cannot safely be said to be the case in the instrument now before us—and here arises the real difference, and the only real difference between our view and that of the controlling opinion.

It follows from what has been said that in our view the second contention of appellant is approximately the correct contention; and that the proper construction of the contract before us is that appellee had the right under the specific or primary period of ten years mentioned in the deed to cut and remove the timber within that special or primary ten-year period, and has such an additional period, under the general or broader subsequent language used as bears a reasonable relation to the said specific ten-year period, this to be determined under all the competent and material facts and circumstances to be shown to the court, and under familiar rules applicable to this particular subject, as often set forth in the written opinions of this and other courts—this additional period being conditioned, as the parties have expressly provided in the contract, upon the payment annually by appellee of all taxes during said extended period.

We are of the opinion, therefore, that the Court should not have made the injunction perpetual against appellant, but should have adjudged either (1) some definite period of reasonable extension beyond the ten years—that period to have some just and reasonable relation to the said primary period—during which the injunction would operate, or (2) should issue the injunction to remain in force until the further order of the court, jurisdiction being retained for such further order, or (3) should make some other such decree as will preserve the rights of both parties throughout the reasonable extension period.

**McGehee, J.,** and **Ethridge, P. J.,** concur herein.