## O'NEAL ELECTRIC CO. v. AIR CONDITIONING ENGINEERS, Inc.

### Civ. A. No. 1081.

United States District Court
S. D. Mississippi, S. D.

Oct. 27, 1952.

Morse & Morse, Stanford E. Morse, Gulfport, Miss., for plaintiff.

Mize, Thompson & Mize, R. W. Thompson, Jr., Gulfport, Miss., for defendant.

WRIGHT, District Judge.

O'Neal Electric Company entered into a contract with Air Conditioning Engineers, Inc., to install certain electrical equipment in the Edgewater Gulf Hotel. In this action it sues for the balance due under the contract and the defendant has counterclaimed alleging the work contracted for was not fully performed.

On February 17, 1950 the defendant entered into a prime contract with the Edgewater Gulf Hotel under which it would install a 100-ton air conditioning system to service the public rooms of the hotel and would install the necessary transformers for that system as well as for 300 ¾-ton room air conditioners eventually to be installed under a separate contract. The defendant determined to subcontract the in-

stallation of the transformers and sought bids from various electrical contractors. Three written bids were received including one from the plaintiff dated March 17, 1950, in each of which the bidder offered to install three 100 KVA transformers. There was no representation or indication in any of the bids as to the adequacy of the transformers to be installed. They were simply bids to install three 100 KVA transformers. Plaintiff's bid being low, on March 30, 1950 it was advised by telephone by the defendant that the contract had been awarded to it and that work should begin at once. Plaintiff started work immediately.

Several days later plaintiff received from the defendant a document labeled "Purchase Order", which document confirmed the telephone conversation of March 30th and provided as follows: "This is your authority to proceed with the electric wiring for the service and air conditioning equipment at the Edgewater Gulf Hotel, Gulfport, Mississippi, as per your proposal of March 17, 1950." Following this language, the purchase order states that the plaintiff is to supply and install transformers "of adequate size to handle the 100-ton air conditioning system and the 300 ¾ H. P. single phase room air conditioners." On April 3d plaintiff wrote defendant acknowledging and accepting the purchase order.

The purchase order was prepared by an employee of the defendant who had not theretofore participated in any way in soliciting bids from the electrical contractors, including the plaintiff. This employee testified that in preparing purchase orders addressed to subcontractors, it was his practice to include therein the language of the prime contract which outlined the obligation of the defendant concerning the work to be performed under the subcontract.

On April 15, 1950 the hotel wrote the defendant inquiring as to whether the three KVA transformers delivered to the hotel, but then uninstalled, would be adequate for the 100-ton air conditioning system and the 300 room air conditioners. The defendant made no answer to this letter and did not advise the plaintiff of its receipt. On June 22, 1950, after the plaintiff had completed its work on the job, the hotel again wrote the defendant advising that the three 100 KVA transformers which had been installed were not of sufficient capacity to serve the 300 room air conditioners as well as the 100-ton air conditioning system. On July 3, 1950 the hotel again wrote the defendant regarding the inadequacy of the transformers and demanded that it complete its contract.

The defendant, after agreeing with the hotel that the three 100 KVA transformers installed by the plaintiff were inadequate, employed an electrical engineer. The electrical engineer advised the defendant that three additional 167 KVA transformers would be required to service the 100-ton air conditioning system and the 300 room air conditioners. The defendant then let a new contract to an electrical contractor who provided and installed the additional transformers at a cost of $5,816.76. When plaintiff brought this action for the balance due on its contract, the defendant counterclaimed for $5,816.76.

Plaintiff contends that it was asked by the defendant to bid on the installation of three 100 KVA transformers, that it did so in writing, that defendant accepted its bid, and that the work performed was in complete compliance with the bid. Defendant, on the other hand, maintains that the plaintiff's bid was not accepted, that a counter offer in the form of the purchase order was made by the defendant, and that the plaintiff accepted the counter offer. The defendant asserts that the purchase order and the acceptance thereof by the plaintiff amounted to a contract in writing and that parol evidence may not be admitted to vary the terms thereof. It submits further that even if parol evidence be admitted, it would show that the plaintiff and the other electrical contractors, who bid on the sub-contract for the electrical work, were asked to bid, not on the installation of three 100 KVA transformers, but on sufficient transformers to service the 100-ton air conditioning system as well as the 300 room air conditioners, and that it was the bidders as electrical contractors who determined what transformers were required.

Although the testimony from the parties is in dispute on the point, it is clear from the evidence that the plaintiff as well as the other bidders on the transformer installation were asked by the defendant to bid, not on the transformer requirements of the prime contract, but on the installation of three 100 KVA transformers. The record shows that three bids were received and all three were for the installation of three 100 KVA transformers. It is inconceivable that all three electrical contractors could have made the same error in determining the number of transformers necessary to perform the work which the defendant under its contract with the hotel was required to perform. As a matter of fact, the evidence shows that the three 100 KVA transformers were adequate for the 100-ton air conditioning system installed in the hotel and that the bidders were unaware of any additional transformer requirements concerning room air conditioners eventually to be installed.

It would appear therefore that the defendant asked for and received from the plaintiff a bid for the installation of three 100 KVA transformers. By advising the plaintiff on March 30th that its bid was accepted and to begin work, the contract was complete. In soliciting and accepting plaintiff's bid, the defendant may have been under the erroneous impression that three 100 KVA transformers would be enough to comply with its contract with the hotel. Such false impression, however, would relate to a matter collateral to the contract in suit and would not amount to mistake as would vitiate, or require reformation of, this contract. Restatement of the Law of Contracts § 503; Williston on Contracts § 1559. Such mistake as there may have been would also be completely unilateral on the part of the defendant and in no way contributed to by plaintiff. Actually, there was no mistake between the plaintiff and defendant. Each knew what was to be performed under their contract and it was performed.

The sending of the purchase order to the plaintiff by the defendant in no way affected the contract already entered into and on which work had already begun.

Even if it be assumed that this purchase order constituted part of the contract between the parties, parol evidence would have to be admitted to reconcile its repugnant provisions. In one paragraph the purchase order requires the plaintiff to proceed with the work "as per your proposal of March 17, 1950", which proposal was to install three 100 KVA transformers, and in another paragraph states that sufficient transformers for the 100-ton air conditioning system and the 300 room air conditioners should be installed. Since these two provisions are obviously in conflict, the purchase order would have to be reformed in order that it express the terms of the contract as entered into by the parties. Restatement of the Law of Contracts § 238; Williams v. Batson, 186 Miss. 248, 187 So. 236, 128 A.L.R. 1138. So reformed, it would require the installation of three 100 KVA transformers.

Let a judgment be prepared dismissing the counterclaim and awarding plaintiff the balance due under the contract.