**AIR CONDITIONING ENGINEERS, Inc.**
v.
**O'NEAL ELECTRIC CO.**
No. 14452.

United States Court of Appeals,
Fifth Circuit.
May 14, 1954.

Stanford E. Morse, George E. Morse, Gulfport, Miss. (Morse & Morse, Gulfport, Miss., of counsel), for appellee.

Before BORAH and RUSSELL, Circuit Judges, and DAWKINS, District Judge.

BORAH, Circuit Judge.

This is an appeal from a final judgment of the District Court in favor of the plaintiff O'Neal Electric Company and against defendant Air Conditioning Engineers, Inc., in a suit based on a contract for the installation of electrical transformers.

Plaintiff instituted this action in the Chancery Court of Harrison County, Mississippi, to recover from the defendant and a named garnishee the sum of $3,181 with interest from July 18, 1950. The bill of complaint alleged that on the 30th day of March, 1950, defendant entered into a contract with plaintiff for electrical installation work to be done on the Edgewater Gulf Hotel in Harrison County at and for a price of $6,681 for electric equipment, labor and materials; that plaintiff complied with the terms of the contract and completed it according to plans and specifications; was paid the sum of $3,500 on account; and there is now due and owing to plaintiff the sum of $3,181, the balance due under the contract. The defendant removed the cause to the United States District Court for the Southern District of Mississippi on the ground of diversity of citizenship. Thereafter, and after entering into a stipulation with plaintiff releasing the garnishee, defendant filed an answer and counterclaim in which it alleged that plaintiff had not furnished sufficient transformer capacity for the carrying out of the contract and demanded judgment against plaintiff for expenses incurred in completing this work in the total sum of $5,816.76 with interest. Issue was joined; a trial was had before the court without a jury; and the trial court entered its written opinion [1] and final judgment dismissing the

Marion R. Vickers, Mobile, Ala., R. W. Thompson, Jr., Gulfport, Miss. (Mize, Thompson & Mize, Gulfport, Miss., Vickers & Thornton, Mobile, Ala., of counsel), for appellant.

[1]. The District Court's opinion is reported as O'Neal Electric Co. v. Air Conditioning Engineers, Inc., 108 F.Supp. 209.

counterclaim and awarding plaintiff the amount sued for. Defendant appealed.

It is shown by uncontradicted evidence that on February 17, 1950, the defendant entered into a written contract with Edgewater Gulf Hotel under the terms of which it agreed to install in the hotel (1) a 100 ton air conditioning system to service the public rooms and (2) certain electric transformers which were described in the contract as "transformers large enough to supply this system and a total of three hundred (300) ¾ horsepower room air conditioners * * which are to be installed under a separate contract." Prior to entering into the prime contract and following its usual custom defendant decided to subcontract the electrical work. Pursuant to such decision, it sought bids and incidental relevant factual information from various electrical contractors and obtained a written bid from Economy Electric Construction Company, Inc., on December 20, 1949, in which the bidder offered to install three 100 KVA transformers but made no representation that these transformers would be large enough to supply both the 100 ton air conditioning system and the proposed individual room air conditioners. In computing the amount to be bid for the performance of the prime contract, the defendant used the figures supplied by Economy Electric Company as a basis of cost for the electrical work. Thereafter, defendant continued to solicit bids and in the month of March, 1950, after having received a second written bid which also proposed to furnish and install three 100 KVA transformers, defendant approached the plaintiff.

It affirmatively appears from the testimony of plaintiff's witness, Achee, that defendant's sales manager, Keith, brought Achee to the hotel, showed him the proposed location of the equipment and the transformers, and told him that he wanted a bid on three 100 KVA transformers. Thereafter, on March 17, 1950, plaintiff submitted a detailed written bid by the terms of which it agreed to furnish all labor and materials necessary to complete the installation of two 50 ton air conditioning units, including furnishing and installing, ready for service, three 100 KVA transformers, at and for a price of $6,681. On March 30, 1950, defendant's vice president, Mutchnick, telephoned plaintiff's office and advised Achee that plaintiff had the job and it should go ahead and start assembling the materials and begin work; and that defendant would send plaintiff a purchase order that day or at a later date. Mutchnick admitted that he initiated this telephone call, and that after advising Achee that his price was right and was the most competitive he authorized plaintiff to proceed. This in substance is the contract relied upon by plaintiff and it is not disputed that plaintiff did proceed to furnish and properly install the three 100 KVA transformers for which it demanded the sum specified in its bid.

We next consider the evidence bearing upon the defendant's version of the contract. On direct examination by counsel for defendant, Mutchnick gave an affirmative answer to the following leading question:

"Q. Then as I understand it you called Mr. O'Neal [plaintiff's president] and told him that he was going to be awarded the contract and you were sending your counter proposal to him? A. Yes, sir, that is correct."

This so-called "counter proposal", a label which counsel ascribed to the purchase order, was drafted by Mutchnick following his telephone conversation with Achee. On the day following which was March 31, 1950, Mutchnick wrote plaintiff stating that he was enclosing a "purchase order" covering the work to be performed by it at Edgewater Gulf Hotel. The letter recites that the purchase order was self explanatory, but if there were any questions, defendant would appreciate being advised; and plaintiff was requested *to acknowledge receipt* of the order and proceed to make arrangments for its portion of the work. The enclosed purchase order read in part

as follows: "Confirming verbal order of Mr. Mutchnick to Mr. Oscar O'Neal and Mr. N. S. Achee as of 3/30/50: This is your authority to proceed with the electric wiring for the service and air conditioning equipment at the Edgewater Gulf Hotel, Gulfport, Mississippi, as per your proposal of March 17, 1950." This language was followed by a statement which does not comport with the plaintiff's bid to furnish these 100 KVA transformers in that the order further recites among other things that plaintiff is to supply and install transformers "of adequate size to handle the 100-ton air conditioning system and the 300 ¾ H.P. single phase room air conditioners." While defendant insists that this statement constituted a counter proposal, Mutchnick himself explained his reason for including this statement in the purchase order. More specifically he testified that it was his custom and practice to insert in purchase orders the pertinent parts of the prime contract and that he had done so in this case. That the reason for so doing was because his company was obligated to furnish the hotel precisely what was stated in the purchase order and he in turn was outlining and passing on to plaintiff what it had to furnish. If, then, this was an attempt to pass on to plaintiff the responsibility of determining the transformer requirements that information was certainly conveyed in a most casual manner when viewed in the light of the fact that plaintiff had not been asked to bid on transformer requirements in the beginning and defendant had already accepted its bid. Furthermore, it is difficult to conceive that Mutchnick, who admittedly knew nothing about the preliminary negotiations between defendant and the bidders including plaintiff and who did not know that the three 100 KVA transformers were not of adequate size to supply both the 100-ton system and the 300 room air conditioners, would either undertake or have reason to propose a counter offer on behalf of defendant. Indeed, work had already commenced and was in progress before it was ascertained that the transformers would be inadequate and this fact was discovered by Edgewater Gulf, not by either of the parties to this suit.

Plaintiff was requested to acknowledge receipt of the purchase order and it did acknowledge receipt and acceptance thereof. This manifestation of assent to the terms and provisions of the purchase order requires an examination of those terms to ascertain whether a reasonable person in plaintiff's position would have recognized in the language of the order that any attempt was being made to modify or change the preceding contract.[2] Certain it is that there are no words which purport to convey the information that the transformers already contracted for were not of adequate size to supply both the 100 ton system and the 300 room air conditioners and that additional or different transformers were required. On the other hand the order speaks plainly of confirming the previous verbal order placed by Mutchnick and authorizes plaintiff to proceed as per its proposal. There is no clear and unequivocal language to be found in either the purchase order or the letter of transmittal to plaintiff which plainly suggests that any attempt was being made by defendant to make a new or a different proposal and it is possible to read the purchase order as a counter proposal only if the reader is aware that the three proposed transformers were inadequate. This fact was then unknown to the parties.

The District Court found that the defendant asked for and received from the plaintiff a bid for the installation of three 100 KVA transformers; that the defendant made the contract complete when it advised plaintiff that its bid was accepted and it should begin work; that the sending of the purchase order to the plaintiff by defendant in no way affected the contract which had already been entered into; and that there was

---

2. The test of the true interpretation of an offer or accepatnce is as set forth in Williston on Contracts, Rev.Ed., § 94.

 

no mistake between plaintiff and defendant as each knew what was to be performed under their contract and it was performed.

The defendant, aggrieved by these findings, contends (1) that the "contract documents"—the bid, the purchase order and plaintiff's letter acknowledging receipt thereof—are clear and unambiguous and the court erred in allowing the admission of parol testimony to vary the terms of the contract or to aid in the construction thereof; (2) that if the contract documents were not clear and unambiguous on their face the undisputed evidence showed that it was the duty of plaintiff to install transformers of adequate size to carry the load specified; and (3) that the court erred in concluding that there was a verbal acceptance by defendant of plaintiff's bid; and even if there was such acceptance the verbal agreement was later reduced to writing, was merged into the purchase order and became a part of the written agreement which in turn became the contract.

 We find no merit in any of these contentions. Plaintiff's purpose in introducing the oral testimony in the presentation of its case was not to alter or vary the terms of a written contract or to construe such contract, but to prove a contract which consisted in its entirety of plaintiff's written bid and defendant's unequivocal acceptance by telephone. Furthermore, plaintiff had a right to show as it did that the purchase order was not a counter offer or a constituent part of the contract. As to defendant's second assignment of error we do not at all agree that the undisputed evidence showed that plaintiff was bound to furnish transformers sufficiently large to carry the load specified in the purchase order. Suffice it to say as to this contention that the court heard the witnesses in open court, examined some of them at length, and reached a contrary conclusion and its findings are supported by substantial evidence and should not be disturbed. Rule 52(a) Federal Rules of Civil Procedure, 28 U.S.C.A. The defendant's third and last contention is no better taken. The District Judge as the trier of facts was clearly entitled to accept plaintiff's evidence concerning defendant's acceptance by telephone and to disregard the suggested answer of Mutchnick that he proposed sending plaintiff a counter offer. The defendant's alternative contention that the verbal agreement was reduced to writing and became a part of the contract has been considered and we think effectively put at rest by what has already been said and we need not discuss it further in view of our holding that the contract was complete upon defendant's positive and unequivocal acceptance of the bid and our further holding that the purchase order was not a counter offer either in fact or in law.[3]

The judgment of the District Court was right and it is Affirmed.