UNITED STATES of America for the Use and Benefit of W. J. SANFORD, Jr., Plaintiff,

v.

CONTINENTAL CASUALTY COMPANY and G & R Construction Company, a Corporation, Defendants.

Civ. A. No. EC 6649.

United States District Court
N. D. Mississippi, E. D.
Nov. 26, 1968.

Shields Sims, Sims & Sims, Columbus, Miss., for plaintiff.

Hunter M. Gholson, Burgin, Gholson & Hicks, Columbus, Miss., for defendants.

## MEMORANDUM OPINION

ORMA R. SMITH, District Judge.

The United States of America, for the use and benefit of W. J. Sanford, Jr., filed this suit against Continental Casualty Company and G & R Construction Company on June 7, 1966 seeking to recover a certain sum of money alleged to be due Sanford on a masonry contract performed by him for defendant G & R Construction Company in connection with the construction of a gymnasium for the United States Government at the Columbus Air Force Base, Columbus, Mississippi. Plaintiff sued for the sum of $3,258.60, together with attorneys' fees, interest and costs.

The suit was predicated on the Miller Act, 40 U.S.C.A. § 270a et seq. The Court heard the case without a jury at Aberdeen, Mississippi on November 14, 1968.

## FINDINGS OF FACT

Defendant G & R Construction Company (hereinafter referred to as G & R) entered into a contract with United

States of America for the construction of a gymnasium at Columbus Air Force Base, Mississippi. The contract price was $289,710.00 and is dated November 24, 1964.

Defendant, Continental Casualty Company, a surety corporation, made G & R's payment bond in connection with the contract. There is no dispute as to the validity of the construction contract between G & R and the United States or the payment bond executed in connection with the contract.

On March 11, 1965 G & R entered into a subcontract with plaintiff to perform the masonry work necessary to be done in constructing the gymnasium. This work was completed prior to the filing of suit. The controversy arises as to the sum of money which G & R contracted to pay plaintiff for the work.

Before submitting its bid to the United States, G & R calculated the estimated cost of the project. In making its calculation, G & R estimated that 92,000 face brick, a certain number of concrete blocks and other masonry materials would be required in the construction.

G & R, through its Vice-President, Basil G. Dishongh, Jr., contacted plaintiff and solicited a proposal from him to furnish all necessary labor, scaffolding and tools to perform this work; and thereafter the parties entered into a written contract, the essential portions of which are as follows:

| Quantity | Item | Unit | Total |
|---|---|---|---|

Furnish all necessary supervision, labor, equipment and perform all work for the complete installation of Brick, Structural Glazed Tile and Concrete Masonry Units, in strict accordance with contract plans and Sections 4 and 5 of contract specifications and all amendments pertaining thereto, and written proposal attached, hereto, and made a part of this subcontract/purchase order, as follows:

| Quantity | Unit | Total |
|---|---|---|
| 92,000 Face Brick | at 72.50 per M | $6,670.00 |
| 4″ CMU | 2100 at .23 cents | 483.00 |
| 6″ CMU | 1350 at .25 cents | 337.50 |
| 8″ CMU | 18,900 at .25 cents | 4,725.00 |
| 12″ CMU | 3,100 at .30 cents | 930.00 |
| Glazed Structural Tile | 12,295 at .27 cents | 3,319.65 |
| Mortar | 160 Cubic Yards at 9.00 per Cu. Yd. | 1,440.00 |
| Mortar Fill at Jambs | 26 Cubic Yards at 12.00 Cu. Yd. | 312.00 |
| Joint Reinforcing | 17,300 L/F at .01 cents L. F. | 173.00 |
| Saw Blades | | 180.00 |
| Painting & Cleaning | | 300.00 |
| 11½% Payroll Taxes & Insurance | | 2,170.00 |
| | TOTAL AMOUNT ...... | $21,040.15 |

Mr. Sanford, at the applicable wage rate will personally supervise all necessary labor used to do the above work, and his payrolls will be carried on G&R Construction Company's payroll, and this payroll cost, plus 11½% will be charged against the subcontract amount.

G & R CONSTRUCTION COMPANY

(CONTINUED NEXT PAGE)

By /s/ Basil G. Dishongh, Jr.

| Quantity | Item | Unit | Total |
|---|---|---|---|

(CONTINUED FROM PAGE ONE)

Also, any increases or decreases imposed by government modifications, will be made at the unit price per item, as listed above.

ACKNOWLEDGED & ACCEPTED

W. J. SANFORD, JR.

BY /s/ W. J. Sanford, Jr.

DATE _____    G & R CONSTRUCTION COMPANY

BY /s/ Basil G. Dishongh, Jr.

Basil G. Dishongh, Jr., Vice President

"G & R Construction Company
Columbus, Mississippi

Re: Construction of Base Gymnasium
Contract DA–01–076–ENG–6381
Columbus, AFB, Mississippi

Subcontractor to furnish all necessary labor, scaffolding, and tools; and Contractor to carry Subcontractor on payroll and furnish all Insurance necessary at the unit prices as indicated below.

| Quantity | Item | | Unit | | Total |
|---|---|---|---|---|---|
| $4600.00* | Face Brick | 50.00* | 92,000 | 72.50* 85.00 | $ 6,670.00* |
| 420.00* | 4″ CMU | | 2,100 | .23 | 483.00* |
| 337.50* | 6″ ″ | | 1,350 | .25 | 337.50* |
| 5,670.00* | 8″ ″ | | 18,900 | .27 25* | 4,725.00* |
| 1,085.00* | 12″ ″ | | 3,100 | .32 30* | 930.00* |
| 3,385.50* | Glazed Structural Tile | | 12,295 | .33 27* | 3,319.65* |
| 1600.00* | Mortar | | 160 C.Y. | 9.00* | 1440.00* |
| 325.00* | Mortar Fill at jams | | 26 C.Y.* | 12.00 C.Y. | 312.00* |
| 173.00* | Joint Run | | 17,300* | .02 Lin.Ft. | 173.00* |
| | Saw Blades | | | 180.00 | 180.00* |
| 313.00* | Painting & Cleaning** | | | 468.00 300.00* | 300.00* |
| 1,793.99* | Payroll Tax & Ins.** | | | 11½% | 2,170.00* |
| 19,702.99* | | | | Approx.* | *21,040.15 |

W. J. SANFORD          G & R CONSTRUCTION COMPANY

3,000**                                    "

*Written with pencil.
**Encircled with pencil.

———◆———

With one exception, there is no dispute that the contract was signed by the parties in the form in which it was introduced in evidence. The unsigned proposal attached to and made a part of the contract contains opposite the contract price the abbreviated word "Approx." Mr. Dishongh, who executed the contract

on behalf of G & R, testified that this notation was placed upon the proposal before the contract was signed. Plaintiff testified that this word was not written upon the proposal at the time the contract was signed. The contract introduced in evidence is G & R's copy of the contract. Plaintiff produced and there was introduced in evidence a Thermofax copy of the proposal which does not have this word upon it. Plaintiff contends that the Thermofax copy is the copy retained by him when the contract was signed.

The proposal form shown above is typed in part and written in part. An asterisk designates the portion which is written. The remaining, or balance of the proposal, is typed. The column of figures on the left represents the calculations of defendant G & R. Those on the right represent calculations based upon unit prices finally negotiated. It is to be noted that some of the typed figures opposite the unit prices are marked through and written unit prices inserted.

The Court finds on conflicting evidence that the abbreviated word "Approx." was not inserted on the proposal at the time the contract was executed; and that the proposal form was furnished by plaintiff.

G & R urges that if the Court finds that the proposal form was prepared by plaintiff, the contract in its entirety should be strictly construed against him. It is to be noted, however, that only the typed portion of the proposal is shown to have been drafted by plaintiff. The parties then used the proposal as a worksheet and attached it to the contract which they jointly prepared on a form used by G & R. Under such circumstances the Court cannot apply the strict construction rule against plaintiff as to the contract in its entirety but only to the typed portion of the proposal attached to and made a part of the contract.

Before submitting a proposal to G & R plaintiff secured and checked plans and specifications for the job in order to verify estimates which had been made by G & R in bidding the work. G & R contends that the total contract amount had no real meaning; that the price was inserted as an estimate or approximate amount of the total cost of the work; and that plaintiff was to be paid a price based upon the amount of materials used computed at the unit price set forth in the contract.

G & R argues that if the contract is one for a fixed price, there is no reason for unit prices to be set forth in the contract. The contract provides that any increase or decrease imposed by government modifications will be made at the unit price per item, as listed in the contract. The Court finds that in order to make this provision effective, it was necessary to show the unit prices at which increases or decreases would be made.

The contract did not provide a method for arriving at the number of units used in the performance of the work. At the trial there was no evidence offered with reference to the units of any material going into the work except face brick.

G & R, in arriving at the amount to be paid plaintiff, used the figure of 80,000 face brick. The contract set forth 92,000. The evidence showed that in estimating the number of face brick incorporated into the building, based upon completed wall space, one witness estimated 79,200; another, 73,073. G & R ordered 95,000 brick for the job. Of this amount G & R estimated that 10,071 brick were unused and placed in stock and 4800 were culls. This left, according to these estimates, 80,129 brick which were used in completing the job.

Plaintiff did not keep a record of the brick or other material incorporated in the building. G & R met plaintiff's payroll and paid for materials which plaintiff agreed to furnish.

In making its settlement with plaintiff, G & R determined that plaintiff was due

$17,818.97. G & R did not include in this figure any amount for payroll taxes and insurance. The contract includes the sum of $2,170.00.

A comparison of the units said by G & R to have been used in the work with those set forth in the contract and the resulting difference in contract cost is shown by this schedule.

| | MATERIALS | | CONTRACT PRICE | |
| --- | --- | --- | --- | --- |
| | Contract | Estimates | Contract | Per Unit |
| Face Brick | 92,000 | 80,000 | 6,670.00 | 5,800.00 |
| 4" CMU | 2,100 | 3,300 | 483.00 | 759.00 |
| 6" CMU | 1,350 | 3,300 | 337.50 | 825.00 |
| 8" CMU | 18,900 | 15,000 | 4,725.00 | 3,750.00 |
| 12" CMU | 3,100 | 2,500 | 930.00 | 750.00 |
| Tile | 12,295 | 12,000 | 3,319.65 | 3,240.00 |
| Mortar | 160 C.Y. | 150 | 1,440.00 | 1,350.00 |
| Mortar Fill | 26 C.Y. | 25 | 312.00 | 300.00 |
| Joint Reinforce | 17,300 | 1,500.00 | 173.00 | 150.00 |
| Saw Blades | | | 180.00 | 180.00 |
| Painting & Cleaning | | | | |
| 11½% Pay | | | 300.00 | 300.00 |
| Roll & Ins. | | | 2,170.00 | |
| (8x8x8) | 800 | | | 160.00 |
| Selling Pre Cost Sales | | | | 150.00 |
| | | | 21,040.15 | 17,714.00 |
| ADD – amount due on contract for | | | | |
| Government increases | | | 104.97 | 104.97 |
| | | | 21,145.12 | 17,818.97 |
| EXCESS of stipulated price on unit price | | | 3,326.15 | |

Plaintiff contends that he contracted with G & R to perform the masonry work for a fixed price; that the per unit prices were shown in the contract because they had been used to calculate the final contract sum; and that the contract price was subject to change only should the government modify the plans and specifications, in which event the contract price would be increased or decreased by applying the unit prices set forth in the contract to the increase or decrease of materials.

It is stipulated that G & R has made payments to plaintiff on the contract by advances to cover items as follows:

| | |
| --- | --- |
| Payroll through October 16, 1965 | $14,249.36 |
| Payroll Insurance and Taxes 11½% | 1,638.68 |
| Materials Purchased | 1,924.12 |
| TOTAL | $17,812.16 |

G & R entered charges against plaintiff amounting to $932.22 for expense said to have been incurred in performing certain work which plaintiff was under obligation to do, being in the nature of supervision and cleaning. G & R has given plaintiff credit for $104.97 occasioned by a modification of the prime contract by the government. Thus, G & R claims credit for the sum of $18,639.41, resulting in an overpayment of $925.41.

Plaintiff claims that G & R owes him the contract price of $21,040.15 and the allowance on modification of the plans by the government amounting to $104.97, or the sum of $21,145.12. Against this amount plaintiff acknowledges payments totalling $17,812.16. His demand, therefore, is for $3,332.96 plus an allowance of attorney's fees and interest.

In considering the evidence, the Court finds that plaintiff did not clean up as he was obligated to do at the times of which complaint is made by G & R; and that there were times when plaintiff was not on the job to supervise the work.

At the trial G & R offered evidence as to the meaning in the trade of the words "fixed price" and "unit price", contending that these words were connected in a peculiar way to the construction trade and were to be given the significance attached to them in that trade. In the opinion of the Court, these words have well-defined and generally accepted meanings. Especially is this true where the units are designated with particularity, as here. Webster's Third New International Dictionary defines "unit price" as "a price quoted in terms of so much per agreed or standard unit of product or service". In this case, the face brick are listed at $72.50 per M, and the other units are readily ascertainable. There is no need to receive expert evidence on this issue.

### PRINCIPLES OF LAW

There is no dispute as to the validity of the contract. The question is one of construction. There are well-known and generally accepted principles of law applicable to the case. These are:

(1) Contracts are solemn obligations and it is not the function of the Court to make contracts for the parties, but rather to give effect to them as written. Roberts v. Corum, 236 Miss. 809, 112 So.2d 550 (1959); Greenfield v. Supervisors' Dist. No. 3 of Perry County, Miss., 205 F.2d 323 (5 Cir. 1953); United States v. Biloxi Municipal School Dist., D.C., 219 F.Supp. 691, Affirmed 5 Cir., 326 F.2d 237, certiorari

denied, 379 U.S. 929, 85 S.Ct. 324, 13 L.Ed.2d 341.

(2) Effect should be given to all terms of the contract. Bartlett & Co., Grain v. Merchants Co., 323 F.2d 501, 7 A.L.R.3d 541 (5 Cir., 1953).

(3) A writing is interpreted as a whole and all writings forming part of the same transaction are interpreted together. Williams v. Batson, 186 Miss. 248, 187 So. 236, 128 A.L.R. 1138.

(4) Parol testimony is inadmissible to contradict or substantially change the legal import of a written agreement. Freeman v. Continental Gin Co. (5 Cir. Miss.1967), 381 F.2d 459, rehearing denied 384 F.2d 365.

(5) Testimony which does not add to, contradict, vary or change the legal impact of a contract is admissible where it is offered to explain or assist in construing the document; and where the terms be vague and general or have divers meanings, parol evidence will always be admissible of any extrinsic circumstances tending to ascertain the intention of the parties. Valley Mills, etc. v. Southeastern Hatcheries, 245 Miss. 71, 145 So.2d 698, 702 (1962); Freeman v. Continental Gin Co., supra.

(6) An instrument is to be most strictly construed against the party who made it. Home Mutual Fire Ins. Co. v. Pittman, 111 Miss. 420, 71 So. 739; Globe Music Corp. v. Johnson, 226 Miss. 329, 84 So.2d 509.

(7) If printed and typewritten portions of a contract are inconsistent, typed portions prevail; however, whenever it is possible by any reasonable interpretation, when there is no conflict or inconsistency between the two, they should be reconciled so as to give effect to both. Bartlett & Co., Grain v. Merchants Co., supra; Pruitt v. Dean, 198 Miss. 71, 21 So.2d 300, suggestion of error overruled, Miss., 21 So.2d 916.

(8) The allowance of an attorney's fee in a suit under the Miller Act is governed by state law, Boyd Callan, Inc.

v. United States For the Use of Steves Industries, Inc. (5 Cir. Tex., 1964), 328 F.2d 505.

■ (9) Attorney's fees are not allowable in cases of this kind in Mississippi unless the right to recovery is based on contract or statute. Alexander v. Fidelity & Casualty Co., 232 Miss. 629, 100 So.2d 347 (1958).

## CONCLUSIONS

The Court must construe and interpret the contract in the light of applicable principles of construction.

■ Taking first the proposal in which the words "unit prices" appear. The typed portion of the proposal in which these words appear must be construed strictly against plaintiff. On the other hand, the Court must give consideration to the proposal in its entirety. When this is done it is apparent that plaintiff submitted to G & R the proposal upon which the units of materials and proposed unit prices were typed.

■ In the negotiations which followed, the unit prices proposed by plaintiff were changed or amended. The cost per unit was then calculated and aggregated. Three figures were entered on the proposal in writing. G & R's projected costs are shown in pencil in the left hand column. The several items aggregate $19,702.99. The original proposal shows erasures in the right hand column, with new figures entered with pencil. The Court concludes that the proposal was used by the parties as a worksheet, with the overall cost of the work estimated by G & R and plaintiff. Plaintiff's final estimate is incorporated in the contract.

■ The contract contained a provision that "any increases or decreases imposed by government modifications, will be made at the unit price per item, as listed above". The Court should interpret the contract in such manner as to give some effect to this provision. It cannot be ignored or disregarded.

G & R urges upon the Court that the contract is not for a fixed sum but one for the furnishing of labor and services at unit prices, regardless of the quantity of material ultimately incorporated in the work. To give the contract this construction would render meaningless the above-quoted provision. It would mean nothing insofar as the parties are concerned. Whether the government modified the plans and specifications so as to increase or decrease the materials necessary to be used therein, the plaintiff would be paid in any event only for the units of material used in the work. Such a construction would also mean that plaintiff would not have had any reason to verify the estimated quantity of materials to be used in the work which he is shown by the evidence to have done.

While the contract does not provide for plaintiff to furnish materials or supplies, he was charged and paid for materials in the sum of $1924.12. The contract includes a sum of money for payroll taxes and insurance, but G & R does not recognize any obligation to him on account of this item.

The contract is incomplete in many respects, but the Court cannot rewrite it for the parties. The contract must be interpreted as written in the light of circumstances and conditions surrounding the parties at the time of its execution, giving effect, if the Court can, to all provisions contained therein.

■ The Court finds that plaintiff is entitled to recover of defendants, jointly and severally, the sum of $3,332.94, less damages which are hereby awarded defendants in the sum of $932.22. The net recovery will be $2,400.72, with interest at six (6) per cent from June 7, 1966, the date upon which the complaint was filed. Collins v. Carter, 155 Miss. 600, 125 So. 89 (1929); J. R. Watkins Company v. Runnels, 252 Miss. 87, 172 So.2d 567 (1965).

Plaintiff is not entitled to recover attorney's fee. The costs of the suit will be taxed against defendants.

A judgment will be entered accordingly.