DEARBORN MOTORS CREDIT CORP. *v.* HINTON, et al., d/b/a HINTON TRACTOR CO.

No. 39262 September 27, 1954 74 So. 2d 739

*Cary Stovall, James E. Price,* Corinth, for appellant.

*O. R. Smith,* Corinth, for appellees.

McGehee, C. J.

This is a suit to recover an alleged balance of $439.85 due under a conditional sales contract in connection with the sale of a Ford tractor, Dearborn plow, cultivator and disc harrow, and under which conditional sales contract there was originally due the sum of $1,239.85 as the balance of the purchase price of such equipment. The property was sold on September 8, 1951, by the V. M. Box Tractor Company at Corinth, Mississippi, to one Joe D. Rickman, but the contract was executed on that day between the said purchaser and the Hinton Tractor Company, a partnership composed of Frank F. Hinton and O. M. Hinton, which had bought the assets of the V. M. Box Tractor Company on the same date. Thereupon, the conditional sales contract was duly assigned by the Hinton Tractor Company on the said 8th day of September, 1951, to the appellant, Dearborn Motors Credit Corporation. The contract was not only sold and assigned to the appellant but the assignor guaranteed unto the assignee the payment of the indebtedness in the event of default by the conditional vendee, Joe D. Rickman.

The indebtedness of $1,239.85 was due and payable on September 8, 1952, and default was made in the payment thereof. Whereupon, the appellant notified the Hinton Tractor Company and requested it to pay the indebtedness because of the terms of its guarantee. The appellees failed to pay the indebtedness pursuant to such demand, but on November 18, 1952, the appellee Frank Hinton wrote the appellant a letter stating that he had a cash offer of $900 for the equipment and "If you are, willing to take that for the paper, please advise at once."

On November 26, 1952, the appellant declined this offer of $900 for the property with the condition which had been attached that it was offered in full settlement of the indebtedness. But the appellant stated in its reply that "I suggest that if you can get the $900 that you would be in a better position to accept this and pay the

difference, as we expect to receive on this contract $1,239.85; as we bought the contract from you and this bears your endorsement which guarantees the payment to us." In this letter the appellant further requested that the guarantor, Hinton Tractor Company, go ahead and pay off the indebtedness in accordance with the guarantee. Failing to receive payment of the indebtedness, the appellant, on January 13, 1953, repossessed the tractor and other equipment from the conditional vendee, Joe D. Rickman, and thereafter on February 4, 1953, sold the same to the Grady Counce Tractor Company, successor to the Hinton Tractor Company, for the sum of $800. Thereupon, this purchaser made repairs on the equipment at a cost of approximately $186 and then sold the same from its place of business at a net profit of only $98.14.

The assignment executed by the Hinton Tractor Company, as contained on the reverse side of the conditional sales contract, provided, among other things, that "Upon our failure so to pay upon demand, assignee may sell the property described in the contract at public or private sale, with or without notice, and we shall be liable to assignee for any deficiency between the unpaid balance, plus expenses, and the net amount thus collected after deducting cost of sale therefrom." The sale from the appellant to the Grady Counce Tractor Company was made at private sale, and without notice to appellees of the seizure and sale, the notice having been waived as above shown, and the proof discloses that the appellant accepted the offer of $800 from Grady Counce as the first offer made for the purchase of the property.

The question to be decided in this case is whether or not the appellant dealt unjustly with the equitable rights of the appellees as assignors and guarantors, or in any manner failed to exercise reasonable diligence to obtain the best price available in the sale of the property in question. The proof offered on behalf of the appellees,

as partners in the Hinton Tractor Company, is to the effect that the tractor and other equipment was worth between $1,200 and $1,500 at a fair cash market value at the time of the sale by the appellant to the Grady Counce Tractor Company, and that therefore they were damaged in an amount equal to or in excess of the balance sued for after the $800 was credited on the indebtedness of $1,239.85. However, the proof on behalf of the appellees further discloses that they had obtained two offers of $900 each for the property after they had been notified of the default in payment of the indebtedness and requested to pay the same, prior to the time when the appellant took possession thereof on January 13, 1953. The appellee Frank Hinton testified that he had contacted a few people whom he thought might be interested in purchasing this kind of equipment and that "I had an offer of $900 as a starting price. The man said he would start at $900." Q. "Did you feel the fellow would give more?" A. "Yes, I knew he would." He also had an offer from another prospective purchaser in the same amount. Nevertheless, he submitted the offer to the appellant for acceptance on condition that it would surrender the conditional sales contract papers and receive the $900 for the entire debt. The witness did not disclose to the appellant that he knew that one of these prospective purchasers would be willing to pay more than $900 for the tractor and other equipment. The record shows that except for trying to get released of liability in toto the appellees did not cooperate for the protection of their own interests, or that of the conditional vendee, Rickman, who was also primarily liable for the indebtedness. The appellee Frank Hinton did not ascertain how much more than $900 each of the prospective purchasers would have been willing to pay, but on the contrary he sought to induce the appellant to accept less for the property than he now contends it was fairly worth, and in full settlement of the entire indebtedness. Moreover, the appellant, by his letter of November 26,

1952, authorized the assignor and guarantor to accept the offer of $900 and to pay the difference. The appellees necessarily knew that if they should have succeeded in obtaining a better offer than $900 from either of the prospective purchasers their liability for the deficiency judgment would have been lessened. As the conditional vendor of the property, it was their duty to cooperate so as to protect the ultimate legal liability of their conditional vendee Rickman, who is not a party to this suit but against whom the appellees would have been subrogated as the original maker of the note and conditional sales contract.

It is to be noted by the terms of the assignment of the conditional sales contract and the guarantee by the assignor of the payment of the indebtedness therein mentioned, the sale of the property was authorized to be made either at public or private sale. The assignee saw fit to make a private sale of the property, and having done so, we find that, under the numerous authorities discussed in the briefs of counsel, it is well settled that both the conditional vendor and his assignee owed the duty to the conditional vendee, that is to say the original purchaser, to deal justly with his equitable rights and to use diligence to obtain the best price available for the property in making such a sale. Therefore the case of Federal Credit Company v. Boleware, 163 Miss. 830, 142 So. 1, where a public sale openly conducted was involved, and which declared that the mere inadequacy of price will not operate to set the sale aside, unless it is so gross as to furnish evidence of fraud, and that the inequality must be so strong, gross and manifest that it must be impossible to state it to a man of common sense without producing an exclamation at the inequality of it, is not applicable in the case at bar, and the case is not controlling here to have entitled the appellant to the peremptory instruction requested.

In 14 C. J. S. 1031, Chattel Mortgages, Section 376, it is stated: "If not absolutely necessary it is ex-

tremely desirable that the sale under the power should be by public auction, since the mortgagee by selling at private sale, although he does not lose his rights under the mortgage, will be held to strict account, and, as shown infra Sec. 381, may be charged with the best price reasonably obtainable, or with the value of the property."

Again in 19 Am. Jur. 881, Chattel Mortgages, Section 258, it is stated: "*Public or Private Sale.*—Usually where the sale is under an express or implied power, the property may be sold either at a public or private sale. If it is sold, however, at a private sale, the mortgagee will be held to strict account, and if the mortgagor can show that it was sold unfairly and under price, he will be allowed its full value."

In Brewer v. Universal Credit Company, 191 Miss. 183, 192 So. 902, it is stated that "the vendor and his assignee shall, in respect to those rights, deal justly with the purchaser, especially as regards the power of private sale by the vendor after possession taken; * * *." The well-established rule in this State imposes upon a conditional vendor and his assignee the twin duties of exercising good faith in the resale of repossessed articles and of exercising reasonable diligence in protecting the equitable interest of the conditional vendee, that is to say the original purchaser under a conditional contract of sale, the contract of sale, although retaining title in the vendor, being regarded as mere security for the payment of the indebtedness evidenced by the conditional contract of sale.

■■■ We are of the opinion, however, that the verdict of the jury to the effect that the assignor and guarantor of this conditional sales contract had sustained damages equal to or in excess of the full amount sued for as the difference between the $800 received by the assignee at private sale for the property in question and the amount of the indebtedness due thereon is contrary to the overwhelming weight of the evidence in the case and that the

cause should be reversed and remanded for a new trial. The cases cited in the briefs of counsel do not deal with the rights and duties of an assignee of a conditional sales contract in regard to the assignor thereof, who has guaranteed the payment of the indebtedness in case of default by the conditional vendee, who was the original purchaser of the property. But if we assume the rule to be the same, we find that the proof offered by the appellees was the testimony of one of them, who had contacted a few persons prior to the sale whom he thought might be interested in the purchase of such property, and had obtained two offers of only $900, and as hereinbefore stated he sought to persuade the appellant to accept this sum in full settlement of the debt although he testified as a witness that he knew that one of these prospective purchasers would have been willing to have paid more than that amount and he did not disclose to the appellant the names of these two prospective purchasers, nor did he advise the appellant that he knew that one of them would be willing to pay more than the $900 offered.

The further testimony on behalf of the appellees as to the fair, cash market value of the property at the time it was repossessed was given by the original conditional vendee who was evidently interested in protecting himself against a deficiency judgment that might be rendered against the appellees, and the testimony of the prospective purchasers was weakened by the fact that they knew that the property was for sale and had offered only $900 for the same.

 We are of the opinion that the testimony in regard to the National Tractor and Farm Implement Blue Book and the Official Tractor and Farm Implement Manual, and which disclosed the *average* price of used equipment, including used equipment which was in bad condition as well as that which was in good condition, was competent for whatever evidential value they may have had, and should have been considered for whatever such proof

may have been worth, but they do not constitute an exclusive guide for the consideration of a jury in determining what this particular property may have been worth at a fair, cash market value. Nor do we think that the assignee was required at a private sale to obtain the full value of the property as testified to by the witnesses on behalf of the appellees. The appellant was only required to deal justly and obtain the best price available at a private sale of such secondhand property. It is a matter of common knowledge that property sold at a forced sale, whether public or private, does not ordinarily bring the full amount that the prospective purchaser may think it is actually worth. Therefore we think that the verdict of the jury in relieving the assignor of any liability under all of the facts and circumstances hereinbefore mentioned was contrary to the overwhelming weight of the evidence.

Reversed and remanded.

*Kyle, Arrington, Ethridge* and *Gillespie, JJ.,* concur.