PLATT LINCOLN-MERCURY, INC. *v.* SWINK.

No. 41100 April 6, 1959 110 So. 2d 374

*G. L. Lucas*. Columbus, for appellant.

*Holloman v. Threadgill,* Columbus, for appellee.

GILLESPIE, J.

Appellant, Platt Lincoln-Mercury, Inc., plaintiff below, is an automobile dealer, and on September 17, 1957, sold to appellee, Johnie Swink, who was the defendant below, a 1956 model Ford automobile. The price of the car was $2,000. Appellee's trade-in and down payment was sufficient to take care of the deferred payment charges, insurance, etc., plus $66.00. Appellee executed a conditional sales contract to evidence and secure the deferred payments totaling $1,944.00, payable monthly. This contract authorized the seller, upon default and repossession, to sell the car at public or private sale. Appellee made the first two payments due November 2 and December 2, 1956, but failed to make the January 2, 1957 payment. On January 17, 1957, the assignee of the conditional sales contract, Commercial Credit Corporation, repossessed the automobile and delivered it to appellant, and called upon appellant to pay the net balance due under the terms of the guarantee made by appellant to Commercial Credit Corporation when the contract was assigned to the latter. Appellant thereupon paid Commercial Credit Corporation the sum of $1463.00, and the conditional sales contract was reassigned to appellant.

Appellant then did $94.09 work on the automobile in putting it in running order and cleaning it up and re-

placing the seat covers, and then placed the automobile on appellant's used car lot, where it was displayed to the public. No offers were received for the automobile by appellant, and on February 4, 1957, the car was sold to a used car dealer for $1,000.

Appellant then sued appellee for the deficiency of $463.00, plus the $94.09 repairs, plus interest and attorney's fees. Appellee's answer and counterclaim raised the issue whether appellant dealt justly with the equitable rights of appellee or failed to use diligence to obtain the best price obtainable for the property in making the sale of the repossessed car.

The proof on appellant's behalf showed that the automobile would depreciate as time passed. The automobile was placed on appellant's used car lot for about two weeks and no offer was received therefor except the one for $1,000 made by Evans, to whom it was sold. Evans bought two automobiles from appellant the same day, the one in question for $1,000, and another 1956 model Ford, a different type, for $900. Evans testified that he would not have **paid more for** the subject automobile. The court declined, upon objection of appellee, to allow Evans to testify what he got for the automobile when he sold it. Two qualified witnesses testified that the fair market value of an automobile of the make and model here involved at forced sale or auction would be from $700 to $1150, depending upon the condition of the automobile. Appellee admitted that he knew his automobile was on appellant's used car lot for sale. He saw it there.

The evidence offered by appellee to support his position was the testimony of three neighbors who testified that appellee's automobile was in good condition and ran good just before it was repossessed. Appellee testified that the fair market value of his automobile at the time it was sold was $1500 to $1550. His total experience in connection with the value of automobiles was that he

had bought one prior to the subject transaction. The National Automobile Dealers Association Official Used Car Guide showed the subject automobile was worth $1460 in February 1957. This book was shown to be a guide only and considerable testimony was introduced showing this NADA Official Used Car Guide was used mostly to determine loan value and the sales values were inflated due to the fact that it is made from reports based on invoices, and these invoices reflected the custom of dealers to allow more than an automobile was worth on a trade-in, in which case the price of the vehicle being sold was increased accordingly.

 █ Appellant's first assignment of error is that it was entitled to peremptory instruction. This raises the question whether there is any evidence that appellant failed to deal justly with appellee's equitable rights and failed to use diligence to obtain the best price available for the automobile in making the sale on February 5, 1957. We said in Dearborn Motors Credit Corporation v. Hinton, et al., 221 Miss. 643, 74 So. 2d 739, that, "It is a matter of common knowledge that property sold at a forced sale, whether public or private, does not ordinarily bring the full amount that the prospective purchaser may think it is actually worth." █ The rule recognized in the *Hinton* case is that when a conditional seller repossesses property and elects to sell it at private sale he owes to the conditional purchaser the duty to deal justly with the conditional purchaser's equitable rights and to use diligence to obtain the best price obtainable for the property before making the sale. █ There is no evidence in this record to show that better offer could have been obtained for the property in the exercise of reasonable diligence. In the Hinton case, there were offers that exceeded the amount the property sold for at private sale, and the assignee of the conditional sales contract knew of these offers. In that case, we reversed a judgment for the assignor (who stood in the

same relationship to the holder of the contract as appellee does to appellant in this case) as being against the overwhelming weight of the evidence. In the present case, there is no evidence that appellant breached the duty owed appellee, and there was no issue for the jury to decide.

For the reasons stated, the judgment of the lower court is reversed and judgment entered here for appellant.

Reversed and judgment here for appellant.

*Roberds, P. J.,* and *Lee, Kyle* and *Arrington, JJ.,* concur.