In the Matter of **SHINAULT LUMBER PRODUCTS, INC.**

No. DBK 6923–K.

United States District Court,
N. D. Mississippi,
Delta Division.

July 22, 1970.

Leon L. Porter, Jr., Clarksdale, Miss., for Andrew C. Baker, Trustee.

John B. Clark, Jackson, Miss., for petitioner.

## MEMORANDUM OPINION

KEADY, Chief Judge.

This is a petition directed to the Bankruptcy Court for review of the Referee's decision adjudging that petitioner was not a secured creditor of the bankrupt corporation and denying his petition for reclamation of $54,061.66 from bankrupt's estate.

Briefly stated, the facts are as follows. The bankrupt is Shinault Lumber Products of Olive Branch, Mississippi, a Mississippi corporation which was formerly engaged in the brokerage of wood products. In 1966 its president, Spain Shinault, decided it would be profitable for the company also to manufacture wood products. To that end he obtained a loan of $100,000 from The First National Bank of Jackson, Mississippi, to finance the construction of a wood moulding manufacturing plant. Unable to obtain financing for the needed machinery, Mr. Shinault sought the assistance of petitioner, Fred Hoerner, who was an officer of bankrupt and holder of 50% of its stock. Petitioner's main business interest was in Delta Millwork, a Mississippi corporation specializing in production of millwork. He also operated as a factor in the lumber industry under the trade name of Bee-Kay Associates, and has engaged in the lumber industry in various capacities for many years.

At bankrupt's request, petitioner agreed to put up $60,000 to finance the purchase of machinery for its new plant. In late 1966, acting through Bee-Kay Associates, petitioner ordered from James Murphy of Cambridge, Massachusetts, 3 large moulders, each of which was priced in excess of $10,000. The moulders, although invoiced to petitioner, were shipped directly to bankrupt in early 1967 and were never in petitioner's possession. The moulders were paid for by petitioner, who received from Murphy a 5% commission or discount which he passed on to bankrupt.

As of July 12, 1967, petitioner had disbursed the agreed loan of $60,000 as follows:

| | |
|---|---|
| (1) To Murphy (net) | $26,125.00 |
| (2) To bankrupt | 32,354.23 |
| (3) Credit on note | 1,520.77 |

On that date petitioner presented to bankrupt for execution the following instrument, which was signed by bankrupt only and never recorded:

$ 60,000.00    JACKSON, MISSISSIPPI, July 12, 1967    $ 60,000.00

TEN (10) YEARS after date    WE    promise to pay to

_____ _____ BANK OF JACKSON, or Bearer

BEE KAY ASSOCIATES

SIXTY THOUSAND AND NO/100 - - - - - - - - DOLLARS
for value received, with interest at the rate of 6½ per centum
per annum after ___***___ until paid. In case of default in
the payment of this note and it is placed in the hands of an attorney
for collection by suit or otherwise, the maker or makers hereof agree
to pay 10% attorney's fee. Negotiable and payable at the ____
_____ BANK, Jackson, Miss., the maker or makers hereof having
deposited as collateral security for this note the following:

***payable monthly starting Jan. 1, 1968 at the rate of $681.30 per
month with privilege to prepay sooner without penalty

1 Walker Moulder Serial #1050
1 Walker Moulder Serial #1028
1 Walker Moulder Serial #717

And list of machinery marked Schedule A attached herewith, and
that title and ownership of the above will be vested in Bee Kay
Associates until paid.

Approved by _____

In case this note shall not be paid at maturity, the holder of this note is hereby authorized to sell the said collateral, or any part thereof, at any time, thereafter, at public or private sale, without advertising the same or giving any notice and to apply the net proceeds after paying all expenses, to the payment of this note, and said holder is hereby authorized to purchase the whole or any part of said collateral at such sale, free from any right of redemption on the part of the maker or makers hereof, which is hereby waived and released. If, at any time before maturity of this note said collateral, or any part thereof, should depreciate below the present value, which is today estimated to be at least 5% greater than the amount of this note, the holder shall have the authority to demand additional security, either by oral demand or by notice left at the place of business or residence of the maker or makers hereof or by demand addressed to the last known post office address of the undersigned, and if such additional security be not furnished when so demanded, the holder of this note is hereby authorized to sell said collateral, or any part thereof, at any time thereafter, in the manner hereinabove stated. The holder of this note shall also have a lien on all of the above mentioned collateral for any other debt due or to become due by the maker or makers hereof to such holder. Should any money paid on such collateral, while so held, come into the hands of the maker or makers hereof, it shall be held in trust for the holder of this note, to be paid over and applied to this note.

The maker or makers and endorsers severally waive presentment for payment, protest and notice of protest and non-payment of this note.

SHINAULT LUMBER PRODUCTS, INC.

*Spain Shinault*

SPAIN SHINAULT, PRESIDENT

B/D_____ Due 7/12/67
Address 7650 Lamar Avenue—Olive Branch, Miss.
[A3887]

It is evident that the additional funds of $32,355 were used by bankrupt to pay for the purchase of the smaller machinery listed on Schedule "A" referred to above. Later, on December 10, 1968, petitioner and bankrupt agreed that certain unsuitable machinery on Schedule "A" might be traded and other needed machinery substituted therefor and covered by the foregoing document.

In March 1969, petitioner first learned that bankrupt was in severe financial difficulty. In late April petitioner sent to bankrupt numerous tags claiming each of the machines described in the above-quoted instrument as petitioner's property, and directed the bankrupt to attach the tags to the machines, which was done in early May. Petitioner visited the plant shortly thereafter, determined that the 3 moulders were too big for his Delta Millwork concern to use, and then contacted Murphy, the original vendor, regarding possible resale.

On May 9, at a meeting of bankrupt's stockholders, the company's financial situation was discussed and a decision made to file for bankruptcy. Petitioner, as 50% stockholder, approved of this decision. The bankruptcy petition was filed on June 3, 1969. On July 3, petitioner filed a proof of claim as a secured creditor in the amount of $54,061.66, asserting that he had a chattel mortgage on the bankrupt's machinery. The trustee in bankruptcy moved the Referee to order petitioner to show cause why his claim should not be denied, and a hearing thereon was set for August 14. On the day before the hearing, petitioner filed an amended claim alleging that the instrument in question was not a chattel mortgage but a "title retention or title reservation contract or conditional sales contract." Petitioner simultaneously filed his reclamation petition seeking to recover the machinery.

At the hearing petitioner presented two witnesses, Hoerner and Shinault; the trustee offered no witnesses. The Referee ruled that although the parties intended to form a conditional sales contract, the bankruptcy court would not allow such an unrecorded transaction between a bankrupt and one of its officers who was a majority stockholder to cut off the rights of general creditors having no notice of petitioner's claim to the bankrupt's machinery. Petitioner timely filed for review of the Referee's decision by this court, and following submission of briefs, the case is now before the court of bankruptcy for decision.

Petitioner contends that under Mississippi law the instrument signed by the bankrupt on July 12, 1967, is a valid conditional sales contract retaining title in petitioner, and that state law in effect at that time did not require it to be recorded. Petitioner also maintains that since the Referee found as a fact that the parties intended to form a conditional sales contract with reservation of title in petitioner, this finding is here binding unless shown to be clearly erroneous; but petitioner contends that the Referee erred as a matter of law in holding the instrument to be either a chattel mortgage or a pledge rather than a conditional sales contract. The trustee asserts, on the contrary, that the Referee found as a fact that the instrument was not a valid conditional sales contract, and also that even though it might technically fit the broad definition traditionally given to the term "conditional sales contract," an equity court should not allow the document to defeat the rights of bankrupt's other creditors.

■ As a general rule, a valid conditional sales contract with title reserved in the vendor is enforceable even against a trustee in bankruptcy.[1] Whether a particular transaction effects a valid reservation of title in the vendor, or is required to be recorded, or is considered a sale with a chattel mortgage back, ordinarily depends on the law of the state where the chattel is located when

I. 4A Collier, Bankruptcy, § 70.19 [9], p. 250, citing Jacksonville Blow Pipe Co. v. Reconstruction Finance Corp., 244 F.2d 394 (5 Cir. 1957).

the transaction takes place.[2] Under Mississippi law prior to the effective date of the Uniform Commercial Code (March 31, 1968), an unrecorded contract of conditional sale containing a reservation of title, whether oral or written, was effective as against subsequent bona fide purchasers or mortgagees without notice.[3] Although many states have long required conditional sales contracts to be recorded, even before the advent of the U.C.C., Mississippi did not stand alone, for several states as late as 1958 did not require recording, and in some states conditional sales contracts could be oral and reservation of title implied.[4]

An examination of the document in question reveals that the parties unwisely used a standard form of pledge note supplied by a bank and inserted a typed clause reserving title in Bee-Kay.[5] Acknowledging its inept draftsmanship, the Referee nevertheless found that it was the intention of the parties in executing the instrument to make a conditional sales contract with title reserved in Bee-Kay.[6]

■ It is unclear whether the Referee's denial of petitioner's claim was based upon a finding of fact, a conclusion of law, or both. If solely based on a factual determination, it is binding on this court unless "clearly erroneous".[7] The Referee's conclusions of law, however, have no such controlling effect.[8] The distinction between law and fact is

as elusive as that between substance and procedure, but it is not of vital importance in this case. We read the Referee's opinion to mean that although the parties *intended* to make an enforceable conditional sales contract, their real purpose in using that form of transaction was to secure a loan from petitioner, and not to make a sale of goods to the bankrupt. This interpretation squares with the entire course of dealings between the parties. First, all the purchases of machinery, whether by bankrupt or Bee-Kay, were made several months before the instrument was signed and after delivery to bankrupt and installation at its plant. Second, Bee-Kay never had actual possession of the machinery, all of which was selected by bankrupt, and more than half of the purchase price to vendors was paid directly by bankrupt. The fact that the 3 moulders were invoiced to Bee-Kay does not establish that title ever vested in petitioner or Bee-Kay, since an invoice is neither a bill of sale nor necessarily evidence of title, but is as appropriate to a bailment as to a sale.[9] Finally, petitioner's original proofs of claim described the transaction as a "loan" and the instrument as a "chattel mortgage".

■ It is well settled that where a party attempts to secure a loan by characterizing the transaction as a conditional sales contract, courts will treat the transaction as a chattel mortgage, not binding on subsequent bona fide

---

2. 4A Collier, § 70.19 [8], p. 247, citing B. F. Avery & Sons v. Davis, 226 F.2d 942 (5 Cir. 1955).

3. Mid-Continent Finance Corp. v. Grant, 213 Miss. 789, 58 So.2d 1 (1952); Payne v. Parker, 95 Miss. 375, 48 So. 835 (1909).

4. 4A Collier, § 70.19 [9], p. 258; 78 C.J.S. Sales §§ 560, 561, pp. 267–268.

5. We agree with petitioner that the typed portions prevail over the printed "pledge" provisions. Dale v. Case, 217 Miss. 298, 64 So.2d 344, 37 A.L.R.2d 811 (1953).

6. The parties have stipulated the document is ineffective as a pledge because petitioner was without possession of the machinery.

7. Rule 52(a) F.R.Civ.P.; Spach v. Strauss, 373 F.2d 641 (5 Cir. 1967); 2 Collier, § 24 [3].

8. Chaney v. City of Galveston, 368 F.2d 774 (5 Cir. 1966).

9. 22A Words & Phrases "Invoice" p. 361, citing many cases.

purchasers or mortgagees without notice unless recorded. An annotation at 138 A.L.R. 664, entitled "Validity as such of conditional sale contract used to secure repayment of loan," states the rule of law thus:

"A conditional sale contract contemplates a vendor and vendee, not a lender and borrower of money, and therefore an instrument, though in the form of a conditional sales agreement, which is executed for the purpose of securing the payment of a loan of money, will be treated as a chattel mortgage."

The annotation cites one Mississippi case so holding, Payne v. Parker, supra. In that case a tenant farmer, offering two mules as security, sought a loan of money from his landlord. The landlord orally bought the two mules, then resold them to the tenant, reserving title in himself until the price was paid in full. The tenant subsequently gave a deed of trust on the mules to a creditor, who foreclosed thereon and took possession of the mules. In a suit by the landlord to replevy the mules, the Supreme Court of Mississippi, Chief Justice Whitfield dissenting, held that in spite of the intention of the parties to enter into a conditional sales contract with title retained in the landlord, the transaction was actually a loan to the tenant secured by a chattel mortgage on the mules and, being unrecorded, was invalid against subsequent bona fide purchasers or mortgagees without notice. The *Parker* case has never been overruled; in fact similar language was used by Mr. Justice Rodgers in a dictum in a more recent case.[10] It is clear that the *Parker* case

enunciates the general rule, particularly in equity:

"Courts of equity do not favor conditional sales, and they may pronounce an instrument which resolves itself into a security for the performance of an act a mortgage, although at law it may be considered a conditional sale." 47 Am.Jur. 17, Sales, § 833; see also 47 Am.Jur., Sales, §§ 839, 845, 869.

Even before adoption of the U.C.C., Mississippi law did not favor unrecorded conditional sale contracts, for the legislature adopted a statute (Miss.Code Ann. § 268) invalidating all unrecorded conditional sales contracts after the chattel sold thereunder has been in the vendee's possession for three years or more.

■ Transactions which are styled conditional sales but are actually secured loans are particularly suspect when consummated by "insiders". It is the duty of the bankruptcy court, which is essentially a court of equity, to give "careful attention and special scrutiny when the claimants are officers, directors or stockholders of the corporate bankrupt,"[11] for in bankruptcy it is the substance of the transaction and not legal technicalities which should govern. In Re Yale Express System, 370 F.2d 433 (2 Cir. 1966).[12]

■ We conclude that the Referee correctly determined the parties intended to make a conditional sales contract, but since this was for the real purpose of securing a loan and not for a sale of goods, it did not constitute an enforceable obligation since it was merely an unrecorded chattel mortgage. Thus, we affirm the Referee's decision disallowing the claim of petitioner.

10. Dearborn Motors Credit Corp. v. Hinton Tractor Co., 221 Miss. 643, 74 So.2d 739 (1954).

11. Spach v. Bryant, 309 F.2d 886 (5 Cir. 1962); 9 Am.Jur.2d 339, Bankruptcy, § 431.

12. In view of the present state of the record, we do not rule on whether the moulders might be fixtures permanently attached to bankrupt's real estate, thereby requiring the instrument claiming title in them to be recorded. See 4A Collier § 70.20, pp. 283–295.