In the Matter of **DELTA FOOD PROC-ESSING CORPORATION**, Bankrupt.

**William THOMAS, Jr.,** Trustee,
Petitioner,

v.

**GREYSON COMPANY, LTD., INC.,**
Respondent.

No. GBK 70–46–S.

United States District Court,
N. D. Mississippi,
Greenville Division.

Aug. 17, 1973.

See also 5 Cir., 446 F.2d 437.

J. Robertshaw, Robertshaw, Merideth & Swank, Greenville, Miss., for the Trustee.

Jack A. Greyson, pro se.

## MEMORANDUM OF DECISION

ORMA R. SMITH, District Judge.

This action is before the court upon a petition filed pursuant to the provisions of Section 39 of the Bankruptcy Act, 11 U.S.C.A. § 67(c), to review a decision of the Referee. The petitioner, Greyson Company, Ltd. (Greyson Company) seeks a review of the Referee's determination that it held only an unperfected security interest in certain food packaging equipment which was sold by the trustee in bankruptcy. The sale was authorized by the Referee and the proceeds retained by the Trustee. The petitioner did not challenge the sale, but now asserts that it is entitled to the entire proceeds. To resolve the issue, it is necessary to briefly review the background.

In 1969, Delta Food Processing Corporation (Delta Food) sought to acquire four specialized food packaging machines. However, Delta Food was virtually without working capital at that time, and its creditors were pressing for payment of past due accounts. The manufacturer of the equipment, Package Machinery Company (Package Machin-ery), was unwilling to extend significant credit to Delta Food, and Delta Food was unable to provide or directly obtain funds for the purchase. Consequently, two-party negotiations between Delta Food and Package Machinery were unsuccessful.

At the invitation of the officer of Delta Food, the petitioner represented by its principal officer, Jack A. Greyson, entered the negotiations. Petitioner agreed to purchase the desired equipment for a total price of $78,250.00, and Delta Food agreed to "lease" the same equipment for a period of five years. Petitioner paid the total purchase price to Package Machinery which, in turn, delivered the equipment to Delta Food's processing plant where it was installed. The equipment was never in the petitioner's possession. In the year following installation of the equipment, Delta Food entered bankruptcy proceedings.

The entire consideration to be paid under the instrument designated as a lease was $108.000.00, a figure determined by adding 7% yearly "add on" interest for a period of five years to the original purchase price. The total amount was then divided by 60, and the monthly "rent" computed at $1,800.00. Delta Food was required to advance 6 months rent, or $10,800.00, as a security deposit. The total payment was thereby reduced to $97,200.00 to be paid over a period of 54 months.

The "lease agreement" contained standard printed provisions providing that title to the equipment was to remain vested in the lessor. However, the agreement also contained the following typed special clause: "Lessee may pay off 90% of balance".

The Referee specifically found that "the dominant intent of the parties to the so-called lease . . . was that the lessee (bankrupt herein) could, at any time, pay lessor 90% of the balance of unpaid 'rentals' and thereupon acquire full title to said personal property . . rentals being regarded by the parties to said instrument as the 'cost of the money', and that said instrument is

in substance and in fact, a conditional sales contract rather than a lease, the typed special provision overriding the printed portions of said instrument, Greyson's interest in said property being merely a security interest."

The Referee further found that Greyson Company "filed no financing statement . . . revealing its security interest in said property, and that as against the Trustee in Bankruptcy, herein, (Greyson Company's) security interest in said property was not perfected. . . ." Consequently, the Referee held the Greyson Company has no right, title or interest in or to the personal property nor in or to the proceeds of the sale thereof.

The petitioner, Greyson Company, seeks review of this decision. Petitioner contends that the intent of the parties was to execute a lease; that title to the personalty was at all times vested in the petitioner; that the referee improperly received oral testimony to contradict a written agreement; that petitioner was not required to perfect a security interest; and that petitioner should be granted full rights to the proceeds of the sale of the personalty.

The Referee grounded his decision upon the instrument itself and upon the deposition of R. C. Hadley, formerly the chief administrative and operations officer of Delta Food. The deposition was noticed and taken by the attorney for the Trustee. Pertinent portions of the testimony follow:

"Q  In early 1969, could you describe for us, briefly, the state of development of Delta Food Processing Corporation?

A  At that point, the corporation was virtually out of working capital. Its creditors were pressing for payment of overdue bills and, in general, it was in pretty poor financial condition. . . .

Q  I hand you a Petition For Order To Show Cause, filed in the United States District Court for the Northern District of Mississippi and ask, if you will, to examine it and, particularly, the exhibits to it.

A  All right.

Q  Are you familiar with the exhibits to that Petiton?

A  I am.

Q  Do you identify them as correct copies of the originals?

A  Yes, I do.

Q  Exhibits B to the Petition is a lease describing some three frozen food overwrapping machines and one bagging machine; are you familiar with that machinery?

A  Yes, I am

Q  By whom was it manufactured?

A  By Package Machinery Corporation.

Q  Can you tell us whether or not Delta Food Processing Corporation had had any negotiations with Package Machinery?

A  Yes, they had negotiated with the company for this equipment.

Q  What was the purpose of the negotiations?

A  For purchase.

Q  Was Delta Food Processing Corporation successful in those negotiations?

A  No, they were not.

Q  Can you tell us why?

A  Two reasons.  One, Delta Foods did not have that amount of money in its budget for the purchase of the equipment.  And, two, Delta Foods did not qualify as to credit standings to purchase it from Package Machinery. . .

Q  What discussions did you have with Mr. Greyson leading up to the execution of that instrument, Exhibit B?

A  Well, we discussed the equipment, the price, the terms of the money that we were getting from him.

Q  What was your purpose in contacting Mr. Greyson?

A  To find a means to obtain this equipment.

Q  Specifically, what means were you seeking?

A  I was trying to get some money to purchase the equipment. . . .

Q Is this instrument, Exhibit B to the Petition, is that the instrument that was executed by Delta Food—between Delta Food and Greyson Company, Limited?

A Yes.

Q Is that the instrument that related directly to the purchase of this equipment from Package Machinery Company, Inc.?

A Yes, it is.

Q I notice a typed provision, under the heading Additional Provisions, 'Lessee may pay off 90 per cent of balance'. Why was that added to the agreement?

A *So that Delta Food might take title to the property at any time that is felt it had the money and wanted to pay off the remaining balance.* (Emphasis supplied)

Q Had that been negotiated with Mr. Greyson?

A Yes, it had.

Q Are you telling us that the language was placed in there to represent your agreement with Greyson Company, that Delta Food could acquire the title to the property at any time, by paying 90 per cent of the then balance?

A That's correct.

Q The cost of the machinery is approximately $78,000, and the total amount to be paid under this instrument is $108,000; is that correct?

A That is correct.

Q How do you account for the difference between the price of the equipment and the amount to be paid, under this instrument?

A The cost of the money.

Q Could you explain to us what you mean by the 'cost of the money'?

A Well, the principal amount that we needed was the $78,000, and what we wind up paying is the $108,000, and the difference between the two was the cost of the money. . . .

Q In adding this language and, again I quote, 'Lessee may pay off 90 per cent of balance', was there any discussion between you and Mr. Greyson as to the possible tax consequences of that language?

A Yes, he cautioned me about that paragraph, in that the IRS could construe that to be a purchase instead of a lease by having that, and that we might have to go back and pay a tax and pick it up under a depreciation schedule rather than a straight lease.

Q In substance, how do you regard your agreement—the Delta agreement with Greyson, as a purchase or as a loan?

A As a time purchase."

Petitioner did not present evidence before the Referee. However, copies of correspondence between Jack A. Greyson and R. C. Hadley are attached to the petition for review. The court may, in its discretion, receive and consider additional evidence where such a course appears necessary or proper. In re Lindholm, 134 F.Supp. 301 (D. N.D.1955); cf. In re Gowen, 328 F. Supp. 789 (E.D.Mo.1971). In view of the fact that the petitioner's chief officer, Jack A. Greyson, is apparently incarcerated in a California detention facility and, for the purposes of this petition, is not represented by counsel, the court will receive the additional evidence and accord it such weight as is proper even though the evidence is not newly discovered.

The Referee's factual determinations are binding upon this court unless they are "clearly erroneous". See, Rule 53(e)(2), F.R.Civ.P. His conclusions of law, however, have no such controlling effect. In re Shinault Lumber Products, Inc., 323 F.Supp. 1041, 1045 (N.D.Miss. 1970), affirmed, 440 F.2d 121 (5th Cir. 1971). We read the Referee's opinion to hold that, as an issue of fact, the so-called lease was a sham, and that the true intent of the parties was to execute a conditional sales contract in which formal title is specifically reserved as security for payment of the agreed price. The Referee further found, as a matter of law, that the instrument was ineffec-

tive as to the trustee because the petitioner held only an unperfected security interest.

The petitioner, however, contends that the typewritten special provision does not alter the printed provisions of the instrument, and that it was improper to allow oral or parol evidence to contradict the writing. In support of this contention, copies of the correspondence between R. C. Hadley and Jack Greyson are annexed to the petition for review. Although the written instrument is referred to as a "lease", the correspondence reveals little, if anything, as to the true intent of the parties.

Any written instrument must, of course, be interpreted as a whole, and effect given to all provisions. United States v. Continental Casualty Co., 293 F.Supp. 816, 822 (N.D.Miss.1968). Moreover, "[w]here the intentions of the parties to an instrument appear clear and unambiguous from the instrument itself, the court should look solely to the instrument and give same effect as written. If, however, a careful reading of the instrument reveals it to be less than clear, definite, explicit, [and] harmonious in all its provisions, and free from ambiguity throughout, the court is obligated to pursue the intent of the parties, and, to determine the intent, must resort to extrinsic aid." Barnett v. Getty Oil Co., 266 So.2d 581, 586 (Miss.1972).

The Referee determined that the typed special provision "Lessee may pay off 90% of balance" is not harmonious with the printed portions of the instrument and, in effect, alters the terms and creates an ambiguity.

The rule is well settled that typed portions of an instrument prevail over printed portions where the two cannot be reconciled. In re Shinault Lumber Products, Inc., supra, 323 F.Supp., at page 1045, footnote 5. Dale v. Case, 217 Miss. 298, 64 So.2d 344, 37 A.L.R.2d 811 (1953).

To determine the intent of the parties, the Referee received extrensic evidence. The receipt of this evidence was merely an aid in interpretation; it was not a violation of the so-called "parol evidence rule". As Professor Corbin observed, "[n]o parol evidence that is offered can be said to vary or contradict a writing until by process of interpretation it is determined what the writing means. The 'parol evidence rule' is not, and does not purport to be, a rule of interpretation or a rule as to the admission of evidence for the purpose of interpretation. Even if a written document has been assented to as the complete and accurate integration of the terms of a contract, it must still be interpreted; and all those factors that are of assistance in this process may be proved by oral testimony." 3 Corbin on Contracts, § 579 pp. 412, 413 (1960).

 The court, therefore, is unable to conclude that the Referee's determination is clearly erroneous. An appropriate order will be entered sustaining the order of the Referee.