Yazoo & Mississippi Valley R. R. Co. *v.* First National Bank of Vicksburg.

[80 South, 382, Division B.]

1. CONTRACTS. *Construction. Construction as whole.*

   A contract must be construed as a whole and each of its separate provisions should be considered and all of the provisions if possible, harmonized.

2. CONTRACTS. *Railroad Construction. Construction of contract.*

   Where a contract for building a concrete culvert provided for payment for concrete at a certain price per cubic yard, for

placing re-enforcing bars, for excavation, and for sheeting and
bracing at a certain price per thousand feet in "place complete,"
the work was to be done on a unit basis, and plaintiff might
recover under the last item for the value of form lumber used
in laying the concrete.

Appeal from the circuit court of Warren county.
Hon. E. L. Brien, Judge.

Suit by the First National Bank of Vicksburg against
the Yazoo & Mississippi Valley Railroad Company.
From a judgment for plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Hirsch, Dent & Landeau* and *Robert B. Mayes,* for
appellant.

*Brunini, Hirsch & Griffith,* for appellee.

Stevens, J., delivered the opinion of the court.

Appellee, as plaintiff in this action, sued to recover
the price or value of form lumber used by Mr. Havis,
plaintiff's assignor, in the construction of a concrete
culvert for the defendant railroad company. It would
unnecessarily prolong this opinion to make a detailed
statement of the facts or to copy the correspondence,
the invitation for bids, the proposal of Mr. Havis to
do the work, and the plans and specifications which ap-
pellant claims must govern. It is conceded that the
one and only question presented to this court is the
construction of the contract in so far as to determine
whether thereunder the plaintiff can recover for the
lumber used in making the forms into which the cement
was placed. Appellant requested bids "for the con-
struction of a reinforced concrete box culvert at bridge
L-218-35 north of Vicksburg." In the original in-
vitation for bids the chief engineer of the railroad com-
pany listed the approximate quantities for the work,

and in doing so separately listed "1-2-4 concrete." "reinforcing bars," "excavation," "sheeting and bracing;" the quantity of each being approximated, but not guaranteed. The original invitation for bids was issued in October, 1915. Mr. Havis, among others, submitted a bid under date of October 25, 1915, in which he proposed to do the work complete—"inconsideration of the following prices:

(1) 1-2-4 concrete, price per cubic yard .. $8 45
(2) Furnishing and replacing reinforcing bars, price per pound in place complete .... 03¾
(3) Excavation, price per cubic yard .... 1 00
(4) Sheeting and bracing, price per M. ft. B. M. in place complete ...................... 50 00"

In making this proposal Mr. Havis accompanied his bid with a letter in which he states certain conditions upon which the bid is submitted, among others being the following statement which may have some bearing on this case:

"I further beg to advise that this proposal is based on the understanding that the construction of this box culvert will be ordered at a period when the stage of water in Centennial Lake will permit work to proceed without the necessity of constructing cofferdams requiring the use of piles, or otherwise. Should it be required to protect the work by building cofferdams, same will be included as extra work on basis as provided in specifications."

This original proposal of Mr. Havis was not accepted, but the contract was awarded to the Vicksburg Boiler & Iron Works. About a year after the original request was made for bids, appellant requested Mr. Black, its assistant engineer at Vicksburg, to negotiate with Mr. Havis for the construction of this same concrete culvert which the Boiler & Engine Works for some reason had not constructed. These negotiations

led to an agreement with certain significant changes in the contract. These changes are briefly outlined in the following letter written by Mr. Havis of date September 23, 1916.

"The price, eight dollars and forty-five cents per cu. yd. for 1-2-4 concrete in place will be changed to seven dollars and seventy-four cents per. cu. yd. upon the understanding that the railroad company will furnish all gravel and sand required and to cover the increase in the price of cement which was one dollar and thirty-five cents when my proposal was submitted, the present price being two dollars per barrel.

"The price of three and three-fourths cents per pound for furnishing and placing reinforcing bars will be decreased to one and three fourths cents per pound for handling and placing reinforcing bars, the bars to be furnished by the railroad company."

It appears that the expression "1-2-4 concrete" means concrete of one part cement two parts sand, and four parts gravel or broken stone. The culvert was constructed by Mr. Havis, and there is no controversy as to the character of the work.

It is appellant's contention that in the letter of Mr. Havis of date September 23, 1916, addressed to Mr. Westfall, engineer of bridges, there was a revised price "for concrete in place," and that the correct interpretation of this contract placed upon Mr. Havis the duty of furnishing the lumber necessary for making forms for the cement, that the concrete could not be placed without the forms, and that "concrete in place," contemplates a completed job as to mixing and placing the concrete.

The rights of Mr. Havis under the contract were assigned to appellee, who contends that the provision of the contract for "concrete in place" must be construed in connection with item 4 of the contract, "Sheet-

ing and bracing price per M. ft. B. M. in place complete, fifty dollars.''

A jury was waived, and the cause submitted to the trial judge upon pleadings and proof. The learned circuit judge gave judgment for the plaintiff in the sum of two thousand four hundred one dollars and twelve cents, from which this appeal is prosecuted.

There is some controversy as to whether a written contract signed by Mr. Havis after the work had been done is the sole evidence of the agreement and whether it should have been admitted in evidence. This contract was signed by Mr. Havis at the request, of Mr. Black, and in a letter written by Mr. Havis to the chief engineer he states, among other things:

''This work has already been completed, as you know, according to exchange of letters, . . . and, as stated before, I am signing the contract and returning it to you since Mr. Black states this is only a formality so that the railroad company may complete its files.''

Under our view of the case it is immaterial whether appellant may or may not now rely upon this contract as the sole evidence of the agreement. This written contract, which the circuit judge excluded, provides that appellant—''will pay the contractor in full for the performance of the same as follows, to wit:

    (1) 1-2-4 concrete. Price per cubic yard,
        exclusive of sand and gravel, which will
        be furnished by the railroad company,
        seven dollars and seventy-four cents .. $ 7 74
    (2) Placing reinforcing bars to be furnished by the railroad company, price
        per pound in place, one and three-
        fourths cents ........................    01¾
    (3) Excavation, price per cubic yard, one
        dollar ..............................   1 00

(4) Sheeting and bracing, price per M. ft.

B. M. in place complete, fifty dollars .. 50 00''

Whether we gather the intentions of the parties from the correspondence in connection with the plans and specifications, or from this written contract, we are led to the conclusion that the contractor agreed to do the work on a unit basis, and that his compensation must be determined by the four units or separate divisions of the contract fixing this compensation.

We are justified in saying that Mr. Havis understood when he first submitted his bid, and at all times, that item 4, ''Sheeting and bracing'' would embrace form lumber. It seems to be the contention of appellant that this expression contemplated such lumber as would be required in holding back caving banks and water, and counsel for appellant stress the expression ''concrete in place,'' and upon this expression and their interpretation of its meaning ask for a reversal of the judgment appealed from.

It is elementary that a contract must be construed as a whole, and each of its separate provisions should be considered, and all of the provisions if possible, harmonized. This is not a contract whereby Mr. Havis was to furnish all material and all labor and present to the railroad company a completed reinforced box culvert for a lump consideration. The railroad company on the final agreement was to furnish the sand and gravel, the reinforcing bars, the necessary transportation. In submitting the first bid the contractor made it plain that he must do the work at a time when Centennial Lake was not overflowing, and therefore at a time when cofferdams would not be necessary. This points, we think, to his first understanding of the expression ''Sheeting and bracing.'' It is said by appellant, however, that the specifications provided as follows:

"Price paid for concrete shall cover the entire cost of all material and labor required for complete construction for work shown on plans, except as otherwise provided herein" and that this places the cost of form lumber upon the contractor. This result does not necessarily follow. The very provision states "except as otherwise provided herein."

It is significant that the solemn and very lengthy written contract prepared by appellant and signed by the contractor after the work had been completed does not use the expression "concrete in place," but subdivision 1 under paragraph 9, in fixing the compensation of the contractor, provides that the price of concrete is "per cubic yard, exclusive of sand and gravel," and that subdivision 4 of the same paragraph fixes the price of "Sheeting and bracing . . . per M ft. B. M. in place complete." These items of the contract do not limit the use or application of "Sheeting and bracing." The contract nowhere expressly provides that "Sheeting and bracing" shall be used in protecting the banks or in protecting the work against the overflows; there is no limitation whatever as to the use of "Sheeting and bracing." Whatever "Sheeting and bracing" was necessary for the construction of a concrete reinforced box culvert was to be paid for on the basis of the number of feet used.

The testimony is clear that the expression "Sheeting and bracing" may cover lumber used in making forms for the cement. One of the witnesses for the railroad company testified that both "Sheeting and bracing" were used in constructing forms, and also in holding back an excavation. If, then, the oral testimony of witnesses is competent, the preponderance of evidence is with appellee upon the usual and accepted meaning of the term "Sheeting and bracing." On the construction of this item of the contract witnesses for both

119 Miss.—5

parties were introduced. The court permitted oral testimony to explain the terms. The witnesses for the plaintiff concurred in the plaintiff's interpretation of the contract. Some of the witnesses for the railroad company testified that under this contract "Sheeting and bracing" was intended to be used for the cofferdams, while others stated it was intended to be used in the excavations. Mr. Black, a witness for the railroad company, states that in building the cofferdams "Wickfield sheeting" or "Wickfield piling" ordinarily should be used.

If there be any material conflict in the testimony, the trial court has decided in favor of the plaintiff; and so it is that neither upon the law nor the facts is there any occasion for a reversal of the case.

*Affirmed.*