573 So.2d 1378 (1990)
LAMB CONSTRUCTION COMPANY
v.
TOWN OF RENOVA, Mississippi.
No. 89-CA-0832.
Supreme Court of Mississippi.
December 27, 1990.
*1379 H.L. Merideth, Jr., Greenville, for appellant.
Willie L. Bailey, Bailey & Griffin, Willie Griffin, McTeer & Bailey, Greenville, for appellee.
EN BANC
PITTMAN, Justice, for the Court:
Lamb Construction Company filed suit in Bolivar County Chancery Court against the Town of Renova, Mississippi, G.E. Alexander, and Virden, Field & Alexander, Ltd., G.E. Alexander's engineering firm, alleging a breach of contract and asking for damages and an injunction. Lamb Construction also moved for summary judgment on the claim. The chancery court denied the summary judgment motion, deferring the question of costs and attorneys' fees until the hearing on the merits. After the hearing, the chancery court found in favor of the Town of Renova. The chancery court also denied costs and attorneys' fees for the Town of Renova as a result of the *1380 denial of Lamb Construction's summary judgment. Lamb Construction appeals, assigning as error:
I. THE TRIAL COURT ERRED IN FINDING IN FAVOR OF THE TOWN OF RENOVA, AS THE CONTRACT IN QUESTION WAS A PER UNIT CONTRACT AND NOT A LUMP SUM CONTRACT.
The Town of Renova cross-appeals:
II. THE TRIAL COURT ERRED IN FINDING THAT THE TOWN OF RENOVA WAS NOT ENTITLED TO AN AWARD OF ATTORNEYS' FEES AND COSTS FOR PREVAILING ON THE MOTION FOR SUMMARY JUDGMENT.

STATEMENT OF THE FACTS
This case involves a breach of contract action. The three principal players, and the only witnesses at the hearing in this cause, are Sam H. Lamb, president of Lamb Construction Co.; Maurice F. Lucas, mayor of the Town of Renova, Mississippi; and Ed Alexander, engineer for Renova and a member of the firm of Virden, Field & Alexander, Ltd.
On March 19, 1986, Lamb Construction submitted a bid to construct a water distribution system for Renova. Item 2 on the bid listed 6 inch class 160 PVC waterline pipe. Item 2 listed a unit price of $5.50. The amount of pipe listed was 5,530 feet. $5.50 x 5,350 equals $29,425.00. However, the extended total price for Item 2 was $18,725.00, which would have been the correct total had the unit price been $3.50. The typewritten portion of the bid was completed by Ed Alexander. Lamb filled in what was handwritten, including the unit price of $5.50 and the extended total price of $18,725.00 for Item 2. The total price of the entire bid, including the $18,725.00, was $155,749.60.
Lamb explained that Items 1-18, including the Item 2 discrepancy, were to be constructed in the rural section of Renova. Items 19-30 were to be completed in the municipal section. Lamb testified that the rural items were not itemized as specifically as the municipal items, as the municipal section included payment for fittings, which the rural section did not. Lamb stated that there were approximately 50 to 60 fittings which were of necessity installed but were not itemized in the bid. The cost of the fittings alone for the rural items was approximately $3,700.00, and this did not include labor or concrete necessary for installation or stabilization. Lamb stated that the fittings had to be installed and the price had to be absorbed somewhere, so he added the cost to the unit price of Item 2. Lamb testified that this was a standard business practice.
Lamb left a few minutes after the bids were opened on March 19, and did not discuss the matter with Lucas or Alexander. Alexander pointed out the discrepancy concerning Item 2 to Lucas and the Renova Board of Aldermen. The recognition of the discrepancy appears in the minutes of the Board of Aldermen's meeting for March 19, 1986. Alexander offered to call Lamb and get the matter cleared up. Alexander testified that he checked with Lamb by phone, either that night or within the next few days. According to Alexander, "... I don't remember exactly what was said. But I just remember when I hung up the phone, I was satisfied that he agreed with the facts of this particular contract." Alexander stated that he knew Lamb and had dealt with him on other occasions, and for this reason he felt that formal or written efforts to rectify the discrepancy in Item 2 were not necessary. Lamb testified that he didn't notice a mistake in Item 2 at that time and denied that Alexander contacted him about the Item 2 discrepancy at that time. Alexander wrote a letter to the Renova Board of Aldermen recommending that the Board accept Lamb's bid of $155,749.60. A copy of this letter is not in the record. Based on Alexander's letter, Lamb's bid was accepted.
A Notice of Award giving the job in question to Lamb was executed on March 30, 1986. The Notice stated that the bid of $155,749.60 had been accepted. The Town of Renova entered into a written agreement for construction of the water distribution system on March 31, 1986. Item 4 of *1381 the agreement stated: "The CONTRACTOR agrees to perform all of the WORK described in the CONTRACT DOCUMENTS and comply with the terms therein for the sum of $155,749.60 or as shown in the BID schedule." Section 3.10(1) of the agreement stated:
Payment will be made for water distribution system piping at the Contract Unit Price per linear foot, which price shall constitute full compensation of or furnishing all pipe joints, fitting, specials and all other material not particularly specified for separate payment; for furnished tools, all labor, equipment and incidentals; for performing all work including excavation, installation of pipe, backfill, testing, sterilization, clean-up and any other operations essential to completing the water system as specified herein and as shown on the Contract Drawings.
Item 14.1 under the agreement stated:
CHANGES IN CONTRACT PRICE
The CONTRACT PRICE may be changed only by a CHANGE ORDER. The value of any WORK covered by a CHANGE ORDER or of any claim for increase or decrease in the CONTRACT PRICE shall be determined by one or more of the following methods in the order of precedence listed below:
a. Unit prices previously approved.
b. An agreed lump sum.
Lamb also executed a payment bond and a performance bond. Each showed the total amount of the contract to be $155,749.60.
A pre-construction conference was held on May 23, 1986. Sam Lamb, Mayor Lucas, and Ed Alexander were present. Lamb stated that no one said anything to him about the discrepancy in Item 2. Lucas testified that he emphasized to Lamb that Renova only had so much money for the project and could under no circumstances go over that. Lucas said that Lamb agreed to work within these constraints. Lucas stated that Lamb never said anything about a discrepancy in Item 2.
A change order was approved by all parties on June 24, 1986. This order removed $18,731.00 of work from Lamb's contract, which was eventually performed by another party. The face of the change order showed that after the change, the amount of the work remaining was $137,018.60. The total of the two figures was $155,749.60, the total amount of the bid.
Lamb's Partial Payment Estimate 1 (payment request) covered the time period June 30-July 25, 1986. This payment request listed the amount of the contract as $155,749.60. It also listed the unit price for Item 2 as being $5.50. By the end of this time period, July 25, 1986, all of the Item 2 pipe called for under the contract, 5,530 feet, had been installed. According to Lamb, Alexander called him a day or so after he (Alexander) had received Partial Payment Estimate 1, to tell him that a mistake had been made, and the correct unit price for Item 2 should have been $3.50. Alexander also said that he had already submitted the price to the FHA as $3.50, and could not sign or forward the request. Lamb told Alexander he was not going to change the price, that Alexander should go ahead and submit the request and he (Lamb) would take his chances on whether the FHA paid it. Alexander eventually signed the request and submitted it, and Lamb was eventually paid according to the request.
On September 3, 1986, Alexander wrote to Lamb to tell him that he was in receipt of Lamb's second Partial Payment Estimate. Alexander repeated the assertion that the correct unit price for Item 2 was $3.50 and not $5.50. Alexander also stated: "Although I let it get by last month, we need to make a correction this month." He also stated that the Town of Renova would refuse to approve the pay request. Lamb testified that this was the first written notice he had received to the effect that Renova viewed the proper unit price for Item 2 as $3.50 and not $5.50.
Partial Payment Estimate 2 covered the time period June 30-September 25, 1986. The unit price on Item 2 had been changed from $5.50 to $3.50. An asterisk appeared by Item 2. The notation following the asterisk stated: "The unit price of $3.50 in *1382 this estimate is entirely without prejudice to the contractor's position that the unit price under the contract is $5.50." Payment Estimate 2 also shows that Lamb laid 125 more feet of 6 inch class 160 PVC pipe than originally estimated. Subsequent correspondence between Mr. Merideth and Mr. Bailey indicates that the Town of Renova agreed that Lamb could be paid without forfeiting his claim for the alleged shortage on Item 2 pipe.
As of February 3, 1988, Lamb claimed that he had been paid a total of $115,833.92 by the Town of Renova. He alleged that Renova still owed $7,376.98, "for retainage on original contract and for additional fire hydrants installed but not yet paid." This was unrelated to the claim for the discrepancy from Item 2, which Lamb continued to claim as being owed.
Lamb Construction filed suit on July 1, 1988, in Washington County Chancery Court against the Town of Renova, G.E. Alexander, and the firm of Virden, Field & Alexander, Ltd. Lamb alleged that it had laid 5,495 feet of 6 inch class 160 PVC waterline pipe under the contract with Renova. It alleged that the $5.50 unit price should control, and not the $3.50 price. Lamb alleged that Renova owed it $10,990.00, that being the $2.00 difference between the unit prices X the amount of pipe which had been laid. Lamb also asked for a mandatory injunction against Ed Alexander, to force him to complete the documentation required so that Lamb could be paid. The cause was later transferred to Bolivar County Chancery Court. The Town of Renova, Alexander and his engineering firm answered and denied liability. Both Renova and Alexander admitted in their answers that Lamb had installed 5,495 feet of the pipe in question.
Lamb Construction moved for summary judgment on April 10, 1989. The affidavit of Sam Lamb was attached to the motion. The affidavit consists of a summary of the history of the events leading up to the lawsuit, and states the positions of the two sides but does little else. Lamb also attached a copy of the bid, a copy of the agreement, and section 3.10 of the agreement quoted earlier. Renova answered, claiming that there were at least two disputed issues of fact which would preclude summary judgment: which figure controlled Item 2, the unit price of $5.50 or the total extended price, computed by using a unit price of $3.50; and whether Sam Lamb acknowledged that an error had been made and the $3.50 price would be followed after a telephone conversation with Ed Alexander immediately after the bid had been opened. After a hearing the chancery court denied the summary judgment motion. It deferred the question of attorneys' fees and court costs until the hearing on the merits.
The trial in this cause was held on June 26, 1989. After hearing testimony from the three witnesses, the chancery court made several findings. The court found that Renova did not inform Sam Lamb of the discrepancy in Item 2 until late July, 1986, when Ed Alexander contacted Lamb. By this time all of the pipe in question had been laid. The court specifically found Ed Alexander negligent in this regard. The court also found Lamb negligent in making the original error, which Renova relied on in accepting Lamb's bid. It also found the $5.50 price unreasonable and clearly excessive, as compared with other bids. It also condemned the idea that putting excess costs into a unit price was or should be customary business practice. The court seemed to place emphasis on the fact that one party was a municipality which had relied on the total bid figure, and stated that it was "hesitant to find that the misunderstandings of Lamb, or the failure of Alexander to clear that misunderstanding, place a burden on the Town not contemplated in its orders." The court put little weight on whether the contract was defined as a "unit price" contract or a "lump sum" contract. It weighed the equities and found in favor of Renova. The court also declined to award expenses or attorneys' fees to Renova, despite the denial of the summary judgment motion and the finding that the case contained "real difficulties." Neither Ed Alexander nor Virden, Field & Alexander, Ltd. have filed briefs in this appeal. Counsel for both these parties *1383 have been allowed to withdraw from this case pursuant to Miss.S.Ct.R. 46, apparently because the only real controversy remaining is between Lamb Construction and the Town of Renova.

I. THE TRIAL COURT ERRED IN FINDING IN FAVOR OF THE TOWN OF RENOVA, AS THE CONTRACT IN QUESTION WAS A PER UNIT CONTRACT AND NOT A LUMP SUM CONTRACT.
Lamb Construction argues that, as a matter of law, the contract in question is a "unit price" contract, and the chancery court erred when it found that the total amount of the bid, or the lump sum of the contract, should control. The Town of Renova argues that the chancellor's decision is a finding of ultimate fact and should be upheld according to the proper standard of review.
Several general rules of construction should be noted:
In interpreting the writing at issue, the cardinal rule of construction is to give effect to the mutual intentions of the parties. Where, as here, the writing is ambiguous, courts are obligated to pursue the intent of the parties by resort to parol evidence. In addition, the construction which the parties have placed upon the contract, or what the parties to the contract do thereunder, is relevant extrinsic evidence, and often the best evidence, of what the contract requires them to do. Finally, the vagueness and ambiguity found in the writing at issue is construed more strongly against the party preparing it. As regards our standard of appellate review, the interpretation of an ambiguous writing by resort to extrinsic evidence presents a question of fact.
Kight v. Sheppard Building Supply, 537 So.2d 1355, 1358 (Miss. 1989) (citations omitted). If one of two conflicting clauses in a contract seems dominant, that clause should be enforced. Nicholas Acoustics & Specialty Co. v. H & M Construction Co., 695 F.2d 839, 843 (5th Cir.1983).
The initial question of whether the contract is ambiguous is a matter of law. The contract in question is patently ambiguous. The subsequent interpretation of the ambiguous contract presents a finding of fact, which is reviewed under the familiar substantial evidence/manifest error standard. Bryant v. Cameron, 473 So.2d 174, 179 (Miss. 1985).
The chancellor never made a definitive finding as to whether the contract in question was a unit price contract or a lump sum contract. He found instead that this was irrelevant to an interpretation of the contract. Lamb Construction relies on Yazoo & Mississippi Valley R. Co. v. First Nat. Bank of Vicksburg, 119 Miss. 59, 80 So. 382 (1919), and United States ex rel. Sanford v. Continental Cas. Co., 293 F. Supp. 816 (N.D.Miss. 1968). Yazoo involved a unit price contract, which apparently contained no totals and therefore no discrepancies between unit prices and totals. The question there was the interpretation of the contract term "sheeting and bracing".
Continental Casualty involved a suit between a general contractor's surety and a subcontractor. The general contractor, G & R, had entered into a subcontract with Sanford. The contract contained unit prices, estimated quantities, and extended prices which were then added for a total of $21,040.15. These figures were filled in in pencil, jointly, by the two parties. Eventually a controversy arose as to whether Sanford should be paid according to the total price, or according to the unit price multiplied by the amount of bricks eventually used. Finding a lump sum contract, the court stated:
The contract contained a provision that "any increases or decreases imposed by government modifications, will be made at the unit price per item, as listed above". The Court should interpret the contract in such manner as to give some effect to this provision. It cannot be ignored or disregarded.
G & R urges upon the Court that the contract is not for a fixed sum but one for the furnishing of labor and services at unit prices, regardless of the quantity of material ultimately incorporated in the work. To give the contract this construction *1384 would render meaningless the above-quoted provision. It would mean nothing insofar as the parties are concerned. Whether the government modified the plans and specifications so as to increase or decrease the materials necessary to be used therein, the plaintiff would be paid in any event only for the units of material used in the work. Such a construction would also mean that plaintiff would not have had any reason to verify the estimated quantity of materials to be used in the work which he is shown by the evidence to have done.
Continental Casualty, 293 F. Supp. at 823.
Despite the language which Lamb relies on to show that the contract is a unit contract, this does not overcome the fact that Lamb incorrectly multiplied the unit price to arrive at a lower extended figure. This in turn made the bid artificially low. To say that Lamb may now ignore the total extended price and the total figure of the bid would render bid figures and reliance on them meaningless. Also, according to the rule of construction, these figures, filled in by Lamb, should be construed most strongly against it. We find that the chancellor was not manifestly in error in finding in favor of the Town of Renova. This assignment is denied.

II. THE TRIAL COURT ERRED IN FINDING THAT THE TOWN OF RENOVA WAS NOT ENTITLED TO AN AWARD OF ATTORNEY'S FEES AND COSTS FOR PREVAILING ON THE MOTION FOR SUMMARY JUDGMENT.
The Town of Renova relies here on Miss.R.Civ.P. 56(h), which states:
(h) Costs to Prevailing Party When Summary Judgment Denied. If summary judgment is denied the court shall award to the prevailing party the reasonable expenses incurred in attending the hearing of the motion and may, if it finds that the motion is without reasonable cause, award attorneys' fees.
The comment to this rule states:
Subsections (b) and (h) are intended to deter abuses of the summary judgment practice. Thus, the trial court may impose sanctions for improper use of summary judgment and shall, in all cases, award expenses to the party who successfully defends against a motion for summary judgment.
Rule 56(h) has no federal counterpart.
In Cooper v. State Farm Fire & Cas. Co., 568 So.2d 687 (Miss. 1990), State Farm successfully defended against Cooper's Motion for Partial Summary Judgment. The Coopers appealed, and State Farm cross-appealed for its costs and attorneys' fees. Noting that there was no record of the summary judgment hearing and no proof of costs or attorneys' fees, the Court found the cross-appeal without merit. Cooper, at 692. Because there is no evidence in this record as to Renova's costs or attorneys' fees, we find the cross-appeal to be without merit. The judgment of the chancery court is affirmed on direct and cross-appeal.
DIRECT APPEAL AFFIRMED; CROSS-APPEAL AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON and SULLIVAN, JJ., concur.
ANDERSON, J., not participating.
BLASS, J., dissents by separate written opinion.
BLASS, Justice, dissenting:
I respectfully dissent. As I understand this record it is clear that the contractor bid on a unit basis, and the town authorities knew it. They noticed that he had made a mistake in one of the totals and directed the engineer for the town to call it to the bidder's attention. The town, nevertheless, accepted the bid on the per-unit basis. The bid form provided a place for a per-unit bid and another for a lump-sum bid. The bidder used the former and the town accepted it. Payment was made for the first pipe installed at the per-unit price, rather than the erroneous extended sum.
As I see it, the town agreed to the figure, got what it contracted for, and is legally and ethically obligated to pay the unit *1385 prices. The cost is still far below the next higher bid. I would reverse and render.